UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ORIGINAL

_____

BERNICE CURRY- MALCOLM

Plaintiff,

ASSOCIATION OF SUPERVISORS AND
ADMINISTRATORS OF ROCHESTER, ("ASAR")
DR. TIMOTHY CLIBY, PRESIDENT and Individually,
JOHN ROWE, VICE PRESIDENT and Individually,

ROCHESTER CITY SCHOOL DISTRICT,
BARBARA DEANE-WILLIAMS,
SUPERINTENDENT OF SCHOOLS and Individually,
SANDRA SIMPSON, CHIEF OF SPECIALIZED
SERVICES AND FORMER INTERIM EXECUTIVE
DIRECTOR OF SPECIALIZED SERVICES and Individually,
MARY PAULY, EXECUTIVE DIRECTOR OF SPECIALIZED
SERVICES and Individually, TERESA ROOT, ZONE DIRECTOR
OF SPECIALIZED SERVICES and Individually,

Defendants.

_____

**PLAINTIFF'S SECOND
COMBINED VERIFIED
AMENDED COMPLAINT FOR
Civ. No.: 17-cv-6878
U.S.C.A. Appeal No.: 19-2412cv**

**PLAINTIFF'S SECOND
COMBINED VERIFIED
AMENDED COMPLAINT FOR
Civ. No.: 17-cv-6450
U.S.C.A. Appeal No.: 19-2416cv**

**Honorable David G. Larimer**

**JURY TRIAL DEMANDED**

UNITED STATES DISTRICT COURT
FILED
APR 2 6 2021
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

## SECOND COMBINED VERIFIED AMENDED  COMPLAINT

### INTRODUCTION/PRELIMINARY STATEMENT

1.        Plaintiff, BERNICE CURRY-MALCOLM (hereinafter, "Plaintiff" or "Plaintiff

Curry- Malcolm"), proceeding *pro se*, submits this her second combined verified amended

complaint to further expand upon and express in details the allegations previously filed in the

original complaints, i.e., 17-cv-6878, 17-cv-6873, and 18-cv-6450, and 20-cv-6537,as well as her

first combined verified amended complaint dated March 30, 2021.

2.        The second combined verified amended complaint does not include documents as

they are already in the record before the court. Plaintiff, Curry-Malcolm objects to the Court's

dismissal of her first combined amended verified complaint, denial of recusal of Honorable

[1]

David G. Larimer and the reissuing of a leave-to-file sanction against her. Those matters have

been preserved on appeal by and through Plaintiff's Amended Notice of Appeal dated

_____.

3.        Plaintiff will once again comply with the Court's December 30, 2020 Decision

and Order (Honorable David G. Larimer) and the Court's Decision and Order dated April 6,

2021 (Honorable David G. Larimer), (17-cv-6878), Docket 41 and (18-cv-6450), Docket No.:

24, by the submission of her second combined verified amended complaint.

4.        Therefore, Plaintiff complaining of Defendants Rochester City School District

("Defendant RCSD" or "Defendants") and Association of Supervisors and Administrators of

Rochester ("Defendant ASAR" or "Defendants"), Barbara Deane-Williams ("Deane-Williams"),

former Superintendent of Schools, Sandra Simpson ("Simpson"), former Chief of Specialized

Services and former Executive Director of Specialized Services, Mary Pauly, former Executive

Director of Specialized Services, Teresa Root ("Root"), Zone Director of Specialized Services,

Dr. Timothy Cliby ("Dr. Cliby"), ASAR President, and John Rowe ("Rowe"), ASAR First Vice

President in her second combined verified amended complaint alleges herein that:

## THE NATURE OF THIS ACTION

5.        This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e, et seq., and 703 et seq., 42 U.S.C. §§1983 and 1981 *et seq.*; and

New York State Human Rights Law, Executive Law ("NYSHRL"), N.Y. Exec. Law §§290, *et*

*seq.*; and the Age Discrimination In Employment Act of 1967, 29 U.S.C. § 621*et seq.* (ADEA),

alleging that Plaintiff was intentionally, unlawfully and/or willfully discriminated against in the

terms, conditions, and privileges of employment because of her race and age and for retaliation

for engaging in a protective activity, and Equal Protection pursuant to 42 U.S.C. §1983 and New

[2]

York State Human Rights Law claims against all defendants, and breach of contract, and in the assertion of any additional claims after the commencement her complaint dated March 3, 2020 against the Rochester City School District and Rochester City School; District Board of Education (20-cv-6537), and subsequent to July 22, 2020.

6.       One or more acts complained of relates back to the original charges of discrimination dated March 16, 2017, March 30, 2017, April 25, 2017, and August 24, 2017.

7.       One or more of the acts complained of relates back to the original internal complaints of discrimination, the original charges of discrimination and/or the original pleadings before the Court, the Division and EEOC, thereby giving Defendants RCSD and ASAR sufficient notice, awareness, and actual knowledge of the nature of Plaintiff's claims.

8.       Defendant RCSD and Defendant ASAR had actual knowledge of Plaintiff's claims.

## JURISDICTION AND VENUE

9.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. §1343, 42 U.S.C. §§ 1983 and 1981. This action is authorized, instituted and/or regulated or statured pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified 42 U.S.C. §2000e and 703*et seq*., ("Title VII"),  the Age Discrimination In Employment Act of 1967, 29 U.S.C. § 621*et seq*. (ADEA); and New York State Human Rights Law, N.Y. Exec. Law 15, §§ 296 et seq., New York State Human Rights Law, N.Y. Exec. Law and 42 U.S.C. Section 1983: Equal Protection, as well as federal and state laws, and constitutional law of the State of New York and the United States Constitution.

10.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's pendent claims under state law.

11.        Venue in the United States District Court, Western District of New York is proper under 28 U.S.C. § 1391 and each claim for relief and each unlawful employment and labor practice for relief stated herein arises within the United States District Court, Western District of New York, and all parties herein are located within this District.

## ADMINISTRATIVE REMEDIES EXHAUSTION

**Plaintiff's First Internal Complaint**

12.        At all relevant times, Defendant Rochester City School District had an internal filing process for filing of complaints regarding unlawful discrimination, harassment, and retaliation.

13.        At all relevant times, during the 2015-2016 and 2016-2017 school years, as well as the 2017-2018 school year, a complainant could  file informally and/or formally (Superintendent's Regulation 0100-R: Reporting Complaints of Discrimination and Harassment dated August 12, 2015).

14.        A complaint did not have to be in writing but was encouraged.

15.        Specifically, the receipt of a complaint of harassment or discrimination, whether through informal or formal complaint procedures were permitted by Defendant RCSD.

16.        Defendant RCSD's District Policy Prohibiting Discrimination or Harassment of Students or Employees dated March 28, 2015 in relevant part states, "Such report shall be directed or forwarded to the District's designated compliance officer(s) through informal and/or formal compliant procedures as developed by the District. Such complaints are recommended to be in writing, although verbal complaints of alleged unlawful discrimination, including harassment, will also be promptly investigated in accordance with the terms of this policy".

17.        Plaintiff filed an internal complaint of discrimination and harassment against her

[4]

then immediate and direct supervisor, Teresa Root ("Root"), female white, on December 26, 2016 based on race (Black/African American), color ("Black/African American), age (Plaintiff was fifty-eight (58) years old at the time), sex (female, excludes sexual harassment and sexual violence), and retaliation.

18.      Plaintiff's internal complaint also included harassment based on racial profiling/targeting and abuse of power.

19.      Unbeknownst to Plaintiff, by memorandum dated January 13, 2017, by and through its authorized agent, Steven Carling ("Attorney Carling"), then Deputy General Counsel within the Department of Law for Defendant Rochester City School District recommended the dismissal of Plaintiff's internal complaint.

20.      The memorandum was to Barbara Deane-Williams, then Superintendent of Schools and Karl Kristoff, then General Counsel for the Rochester City School District.

21.      On January 17, 2017 by and through it authorized agent, Harry Kennedy ("Kennedy"), Chief of Human Capital Initiatives ("HCI"), the Defendant RCSD dismissed Plaintiff's internal complaint of discrimination and harassment without an adequate, proper, thorough, and competent investigation and closed the matter.

22.      Defendant RCSD's Superintendent's Regulation 0100-R states that upon receipt of the complaint, the Chief of HCI or his or her designee will request an investigation by the Office of Safety and Security.

23.      Defendant RCSD did not request an investigation by the Office of Safety and Security regarding Plaintiff's first internal complaint of discrimination and harassment against Root.

24.      Defendant RCSD dismissed the Plaintiff's first internal complaint of

[5]

discrimination and harassment against Root and did not investigate the complaint and closed the matter.

25.     At all relevant times, Defendant RCSD did not have an appeal process regarding the dismissal of an internal complaint of discrimination or harassment.

26.     Defendant RCSD's Superintendent's Regulation 0100-R regarding Reporting Complaints of Discrimination or Harassment does not prohibit, prevent, or limit an employee, including Plaintiff from seeking and/or taking appropriate legal action in accordance with state and federal law.

**Plaintiff's Second Internal Complaint**

27.     Plaintiff filed a **second** internal complaint of discrimination and harassment against her then immediate and direct supervisor Root, Zone Director for Specialized Services, Sandra Simpson ("Simpson"), female white, then Chief of Specialized Services, and Kari Ann Kittelberger, ("Kittelberger"), female white, tenured Coordinating Administrator of Special Education ("CASE") and Acting Director and CASE of North Star on March 3, 2017 based on race, color, age, and retaliation.

28.     In February 2017, Kittelberger was named the Interim Director of Alternative Special Education Programs at North S .T. A. R., ("North S.T.A.R., or "North Star") and she was also NorthStar's CASE administrator during that time. North S. T. A. R., the S. T. A. R., stands for Students Together Achieving Results.

29.     Defendant RCSD intentionally placed Kittelberger as the Director of North S .T. A. R., full well knowing that Plaintiff was the CASE for that program and full well knowing that the Plaintiff was more qualified than Kittelberger.

30.     Kittelberger and Root continued their harassing and discriminatory actions against

[6]

the Plaintiff and Simpson simply joined in.

31.     In August 2017, Defendant RCSD assigned Jason George ("George"), younger male white, as the Director of Alternative Special Education Programs at North S .T. A. R.

32.     Both Kittelberger and George were less qualified than the Plaintiff.

33.     Kittelberger and George were favored and handpicked by Jordan, Simpson and Root and was placed in the position without having to make application to the same.

34.     On March 6, 2017, Defendant RCSD forwarded the Plaintiff's second internal complaint regarding Root, Kittelberger and Simpson to Mr. Neil O'Brien ("O'Brien"), who was an internal investigator for the school district within the Office of Safety and Security.

35.     O'Brien contacted the Plaintiff via school district email on March 7, 2017 to set up an interview.

36.     On March 13, 2017, after discovering O'Brien's email, Plaintiff emailed O'Brien back to inform him that she had recently been transferred by Defendant RCSD to new school stating in relevant part, "Hi Mr. O'Brien", "I was recently transferred to a new school, so I am swamped with amends, AR, Reeval and program review. Also, if I recall correctly, the witnesses and others are interviewed first, so with you just getting this assignment, I know you will need time to interview all of them. I looks like I can make some time for you on April 7, 2017 at about 1:00p.m., at a location to be determined. I will let you know the location as soon as reasonable".

37.     Defendant RCSD had involuntarily transferred Plaintiff to Charles Carroll Elementary School # 46 on or about February 27, 2017 in violation of the CBA, Article 22.

38.     Simpson told Plaintiff that she had one day to move and that she needed to get her

[7]

stuff out of her office by February 28, 2017 and not to report back at North S .T. A. R., which was located at 175 Martin Street where Plaintiff had been the CASE administrator.

39.  Plaintiff was also involuntarily removed from All City High School which was in violation of the CBA, Article 22: Vacancy and Transfer.

40.  Plaintiff continued to try to balance trying to meet with O'Brien and the great needs of students with disabilities at School # 46.

41.  On or about March 1, 2017, Defendant RCSD added two Charter Schools to Plaintiff's new job duties and responsibilities.

42.  The two (2) Charter schools were  University Preparatory Charter School For Young Men ("UPREP") and  Renaissance Academy Charter School  of The Arts ("Renaissance Charter School").

43.  Plaintiff discovered at School # 46 that there were thirty-five (35) or more students with disabilities that did not have their testing accommodations in place for the up-and-coming May 2017 state tests.

44.  Plaintiff discovered that the workload that Defendant RCSD had involuntarily transferred her to was enormous and incomplete.

45.  Plaintiff and her CSE team at North S .T. A. R and All City High School were in good standing and were prepared for the work at hand when returning from Winter Break (Week of February 20, 2017 through February 24, 2017).

46.  This was not the case with School #46.

47.  Plaintiff complained and voiced her concerns regarding the workload and incomplete tasks at #46 School but that fell on deaf ears.

48.  O'Brien wanted Plaintiff to meet on school district properties. Plaintiff

discussed with O'Brien her concerns under the circumstances.

49.　　　Plaintiff and O'Brien discussed April 7, 2017. After Plaintiff checked her work schedule she realized that April 5, 2017 worked better for her.

50.　　　O'Brien and Plaintiff set up an interview for April 5, 2017. The interview was scheduled for 2:00p.m., at the downtown library, which is located on South Avenue downtown Rochester, New York.

51.　　　On April 5, 2017, Plaintiff went for the scheduled interview to meet with O'Brien.

52.　　　Plaintiff parked in the Court Street Garage.

53.　　　Plaintiff entered the library after passing the security guard at the entrance of the library, she did not see O'Brien.

54.　　　Instead of leaving and knowing that her work schedule was full, Plaintiff waited around for O'Brien because she wanted to get the interview over with and to make sure that O'Brien was not simply running late.

55.　　　Plaintiff also searched the library for O'Brien, but  he was not anywhere to be found. Plaintiff waited some more.

56.　　　O'Brien never showed for the interview with the Plaintiff regarding her second internal complaint of discrimination against Root, Simpson and Kittelberger.

57.　　　Later that day, around 2:50p.m., Plaintiff sent O'Brien an email stating, "Hi Mr. O'Brien, I showed, but you were not there."

58.　　　Plaintiff made a good faith and honest and sincere effort and attempt to meet with O'Brien on April 5, 2017 so that he could interview her regarding her March 3, 2017 internal complaint of discrimination regarding Root, Kittelberger and Simpson.

59.　　　After some exchanges of emails, Plaintiff and O'Brien tentatively rescheduled

[9]

another time to interview her on April 11, 2017.

60.        Plaintiff was not able to keep the tentatively scheduled appointment because it was a short work-week, and she was amid CSE meetings for annual reviews, initials, re-evaluations, and program reviews for students with disabilities at School # 46 and the two charter schools that Defendant RCSD had abruptly and involuntarily placed her at.

61.        Defendant RCSD uprooted Plaintiff from North S .T. A. R and All City High School where she had been CASE. Plaintiff and her team were up to date on their duties and responsibilities and had already projected the needs of students with disabilities on their workload for those programs when returning from the February 2017 Winter break (February 20, 2017 through February 24, 2017).

62.        O'Brien, and Defendant RCSD were in knowledge of and very aware of the complexity of Plaintiff's new workload and work schedule and understood that any dates agreed upon were tentative and may need to be rescheduled.

63.        O'Brien and Plaintiff agreed to schedule the interview for April 27, 2017 after the Easter break at 3:30p.m. The time worked for both O'Brien and Plaintiff.

64.        On April 26, 2017, at 8:25p.m., Plaintiff sent Lori Baldwin, Director of Safety and Security an email regarding some disturbing events that were directed at her by one of Defendant RCSD employee (s), which were retaliation to her internal complaint against Root, Kittelberger and Simpson.

65.        In that email Plaintiff asked Baldwin whether, "Do you and/or Mr. O'Brien have a copy of the Complaint? It doesn't sound like you do.

66.        On April 26, 2017 at 10:31 p.m., Baldwin responded, "No we do not".

67.        Plaintiff exchanged a few more emails with Baldwin and/or O'Neil for

[10]

clarification purposes.

68.     Defendant RCSD response emails made false claim that Plaintiff did not show for the April 5, 2017 interview. Defendant RCSD lied.

69.     Plaintiff sent an email on April 27, 2017 at 2:44p.m., stating, "Lori, "There is no need to try to strong arm me and issue an ultimatum. The Library video will also show that I was there waiting as well. I am in a CASE meeting at Hart Street. He would need to come over. I am on the 3rd Floor; we can meet on the 4th Floor. I will meet him up there." "Also, Have him to bring a copy of the Complaint to I can ensure that you guys have now being given the Complaint."

70.     Plaintiff and O'Brien met in the school district's public cafeteria space where the cleaning person was in and out cleaning and listening and others were walking through at their leisure and listening.

71.     There was no privacy and no secure atmosphere for confidentiality. Plaintiff was truly uncomfortable and made those concerns known to O'Brien.

72.     For the first time and during the interview appointment, O'Brien informed Plaintiff that the interview would take upwards to six hours or more. It was already 3:30p.m.

73.     Plaintiff informed O'Brien that she had not made any arrangements at home and expressed concerns with being on RCSD campus that late into the night.

74.     O'Brien informed the Plaintiff that he wanted additional information. O'Brien and Plaintiff mutually agreed to reschedule.

75.     O'Brien and Plaintiff rescheduled the next interview for May 15, 2017.

76.     Plaintiff again made another made a good faith and honest and sincere effort and

[11]

attempt to meet with O'Brien on April 27, 2017 so that he could interview her regarding her

March 3, 2017, dated March 1, 2017, internal complaint of discrimination regarding Root,

Kittelberger and Simpson

77.     Plaintiff tried to get the interview over with because she was continuously in the

mist of her newly complex work schedule, duties and job responsibilities.

78.     Plaintiff discussed with O'Brien the possibility of May 4, 2017.

79.     Plaintiff expressed to O'Brien that May 4, 2017 may work, but if not May 15,

2017.

80.     On April 30, 2017, Plaintiff sent O'Brien an email, "Hi Mr. O'Brien, I was

hoping the May 4th would work, but this is testing week, so I will see you at the original

scheduling date of May 15th at 10a.m."

81.     On May 15, 2017, Plaintiff went to meet with O'Brien.

82.     The meeting place was at College Town, University of Rochester Barnes and

Nobles Bookstore which was adjacent to the University of Rochester Barnes and Noble

Starbucks Café located in the same building and located on Mount Hope Avenue with the cross

street of Elmwood Avenue, Rochester, New York.

83.     Plaintiff arrived possibly ten (10) to fifteen (15) minutes early so that Defendants

would not make another false claim as it had on April 5, 2017 by falsely claiming that she was a

no show.

84.     Plaintiff parked on Mount Hope Avenue right in front of University of Rochester

Barnes and Noble Starbucks Café and across from the then vacant Bruegger's Bagel.

85.     Plaintiff sent O'Brien an email at 10:07a.m., after not seeing him at 10:00a.m., at

the scheduled time and place.

[12]

86.     Plaintiff then turned off her computer, feed the City of Rochester parking meter and went inside. Plaintiff did not see O'Brien.

87.     Plaintiff, then waited for O'Brien.

88.     Plaintiff also searched the Bookstore for O'Brien. Plaintiff did not see him, so she waited in the Café in plain view.

89.     O'Brien was nowhere to be found by the Plaintiff.

90.     Plaintiff gave O'Brien the benefit of the doubt and again thinking perhaps he was running late, she waited in the adjacent Starbucks Café at one of the tables in plain view of the bookstore, café and street facing Mount Hope Avenue.

91.     Plaintiff waited for about possibly fifty to fifty-five minutes or so for O'Brien.

92.   After O'Brien did not show, Plaintiff left.

93.     Plaintiff later checked her email and saw that O'Brien had emailed her at 10:16a.m., asking, "Are you here?"

94.     Plaintiff also discovered that O'Brien had sent another email at 10:58a.m., "Don't want any misunderstanding, I have been in Barnes and Noble since 10:00a.m. Will you be meeting today?"

95.     Plaintiff did not know that O'Brien had sent her two emails until later that morning around 11:00a.m., or so.

96.     At 11:08a.m., Plaintiff responded to O'Brien email stating, "I had been at Barnes and Noble for a while, but you again were a no show".

97.     At 11:11a.m., O'Brien responded, "Where in the store?"

98.     At 11:23a.m., Plaintiff responded, "There is no misunderstanding. I was at

[13]

Barnes and Noble. The District is simply repeating their behavior and had no intentions of conducting an adequate and proper investigation. This is not the first time that this has happen and the District refused to interview me and to conduct a proper investigation".

99.     At 11:24a.m., Plaintiff wrote, "This was the third time that I made myself available.

100.     Plaintiff did not here from O'Brien after that and had no other contact with him as of 11:24a.m., on May 15, 2017.

101.     Plaintiff made yet another good faith and honest and sincere effort and attempt to meet with O'Brien on May 15, 2017 so that he could interview her regarding her March 1, 2017 internal complaint of discrimination regarding Root, Kittelberger and Simpson.

102.     O'Brien did not show and if he did Plaintiff did not see him.

103.     The City parking meter and the cameras throughout the University of Rochester Starbucks Café and Barnes and Noble Bookstore will confirm that Plaintiff was there waiting for O'Brien.

104.     The City's street cameras will also attest to the fact that the Plaintiff was parked where she said that she was parked between the hours of at least 9:30a.m., or so and at least 11:00a.m., on May 15, 2017.

105.     Plaintiff later learned during the November 15, 2018 Division Hearing during O'Brien sworn testimony and from some documents that the Defendants included in their response which the Plaintiff had never seen or been privy to and/or provided a copy of, that O'Brien stated that on May 15, 2017 at 10:55a.m., that he called Baldwin to advise her of the situation and that Baldwin advised him to leave the location.

106.     Plaintiff also discovered in November 2018 that O'Brien complete his

[14]

investigation on May 24,2017 and submitted his write-up without adequately, properly, fairly, thoroughly, and competently investigating the matter to Defendant Legal Department and HCI.

107.      Plaintiff was never interviewed by O'Brien and neither did O'Brien communicate to Plaintiff that he completed his investigation.

108.      O'Brien neither Defendant RCSD provide a copy of the investigation findings to the Plaintiff.

109.      Plaintiff was not provided a copy of O'Brien's investigation.

110.      O'Brien retired from the school district as an internal investigator in June 2017.

111.      Since June 2017, O'Brien is employed with the Monroe County District Attorney's Office as an internal investigator.

112.      Plaintiff was never interviewed for the second internal discrimination complaint no matter how many times she made herself available to be interviewed, including up to May 15, 2017.

113.      Unbeknownst to Plaintiff, on May 24, 2017, Defendant RCSD dismissed the second internal complaint of discrimination and harassment against Root, Simpson and Kittelberger.

114.      Plaintiff's second internal complaint was dismissed and closed without an adequate, proper, thorough, and competent investigation.

**Plaintiff's First Charge of Discrimination Against Defendant RCSD**

115.      Plaintiff filed a charge of discrimination on March 16, 2017 with the New York State Division of Human Rights ("the Division"), Case No.: 10186902 with dual filing with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No.:16GB701939 against Defendant RCSD.

[15]

116.     The Charge was filed within 300 days after one or more of the alleged acts of discrimination occurred.

117.     On August 29, 2017, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division had jurisdiction and found probable cause.

118.     The matter was scheduled for a public hearing before the Division's Administrative Law Judge, Michael T. Groben ("ALJ Groben") on November 14, 2018 and November 15, 2018, respectively.

119.     ALJ Groben issued his Recommended Findings of Fact, Opinion and Decision and Order recommending dismissal of the complaint on June 10, 2019.

120.     The Division by and through Commissioner Angela Fernandez ("Commissioner Fernandez") adopted ALJ Groben's Recommended Findings of Fact, Opinion and Decision  and Order dated June 10, 2019 and issued a Notice and Final Order dismissing the complaint on October 3, 2019.

121.     Plaintiff received a notice of right to sue Defendant RCSD regarding her March 16, 2017 charge of discrimination from the EEOC (Charge No.: 16G-2017-01939) against Defendant RCSD  on December 4, 2019 (Kevin J. Berry, District Director).

**Plaintiff's Second Charge of Discrimination Against Defendants RCSD and ASAR**

122.     Plaintiff filed a charge of discrimination on March 30, 2017 with the New York State Division of Human Rights ("the Division"), Case No.: 10187122 (ASAR) and Case No.: 10187117 (RCSD) with dual filing with the Equal Employment Opportunity Commission ("EEOC"), against Defendants RCSD and ASAR; (Charge No.: 16GB702096) (ASAR) and Charge No.: 16GB702093)(RCSD).

[16]

123.      The Division separated the charges into two separate charges.

124.      The Charge was filed within 300 days after one or more of the alleged acts of discrimination occurred.

125.      On August 29, 2017, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division did not have jurisdiction over Plaintiff's breach improper practice charges and found no probable cause and dismissed the complaint against Defendant ASAR.

126.      Plaintiff received a notice of right to sue Defendant ASAR from the EEOC (Charge No.: 16G-2017-02096) (ASAR) on September 22, 2017 (Kevin J. Berry, District Director).

127.      Regarding Defendant RCSD, on August 29, 2017, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division had jurisdiction and found probable cause.

128.      The matter was scheduled for a public hearing before the Division's Administrative Law Judge, Michael T. Groben ("ALJ Groben") on November 14, 2018 and November 15, 2018, respectively.

129.      ALJ Groben issued his Recommended Findings of Fact, Opinion and Decision and Order recommending dismissal of the complaint on June 10, 2019.

130.      The Division by and through Commissioner Angela Fernandez ("Commissioner Fernandez") adopted ALJ Groben's Recommended Findings of Fact, Opinion and Decision and Order dated June 10, 2019 and issued a Notice and Final Order dismissing the complaint on October 3, 2019.

131.      Plaintiff received a notice of right to sue Defendant RCSD regarding her March

[17]

16, 2017 charge of discrimination from the EEOC (Charge No.: 16G-2017-02093)(RCSD) on December 4, 2019 (Kevin J. Berry, District Director).

**Plaintiff's Third Charge of Discrimination**

132.      Plaintiff filed a charge of discrimination on April 25, 2017 with the New York State Division of Human Rights ("the Division"), Case No.: 10187620 with dual filing with the Equal Employment Opportunity Commission ("EEOC"), Charge No.: 16GB702468 against Defendant RCSD.

133.      On August 30, 2017, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division had jurisdiction and found no probable cause and dismissed the complaint.

134.      Plaintiff received a notice of right to sue Defendant RCSD from the EEOC (Charge No.: 16G-2017-02468) against Defendant RCSD on September 22, 2017 (Kevin J. Berry, District Director).

**Plaintiff's Fourth Charge of Discrimination**

135.      Plaintiff filed a charge of discrimination on August 24, 2017 with the New York State Division of Human Rights ("the Division"), Case No.: 10189668 with dual filing with the Equal Employment Opportunity Commission ("EEOC"), Charge No.: 16GB704037 against Defendants RCSD.

136.      On February 14, 2018, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division had jurisdiction and found no probable cause and dismissed the complaint.

137.      Plaintiff received a notice of right to sue Defendant RCSD from the EEOC

(Charge No.: 16G-2017-04037) against Defendants RCSD on March 20, 2018 (Kevin J. Berry, District Director).

138.     More than 240 days to a year prior to the institution of the lawsuits, a charge of discrimination was filed with the Division with dual filing with the EOC alleging violation of Title VII by the Defendants RCSD and ASAR.

**The Parties Collective Bargaining Agreement ("CBA")**

139.     At all relevant times, Plaintiff, Curry-Malcolm had a contractual relationship with the school district and her local labor union as a unit member to the parties' agreement under the terms and conditions of employment under the CBA between Defendant RCSD and Defendant ASAR.

140.     At all relevant times, the CBA that governed during the 2015-2016 and 2016-2017 school years was dated July 1, 2009 through June 30, 2014 with negotiated agreements agreed to between the parties, including and up through April 2016.  On or about April 8, 2016, a successor agreement was reached between the parties. The successor CBA that governed on or about April 8, 2016 was dated July 1, 2014 through June 30, 2018.

141.     At all relevant times, the successor CBA that governed during the 2017-2018 school year and dated July 1, 2014 through June 30, 2018 with negotiated agreements agreed to between the parties

142.     To date, no successor agreement has been reached according to the ASAR website and the School Administrators Association of New York State SAANYS"), Deputy Counsel, Jennifer Carlson, Esq.

143.     The governing CBA after April 2016 that now governs is dated July 1, 2014

[19]

through June 30, 2018 with negotiations being agreed to by the parties in between a successor agreement, including changing the name of CASE, tenured area Bracket IV to Associate Director of Special Education, tenured area, Bracket III, i.e., the same benefits of that of an Assistant Principal with better benefits and incentives, including salary increases and vacation time, but not limited to.

144.     At all relevant times, Defendant ASAR has been duly recognized by the Rochester City School District to represent both certificated and civil service administrative and supervisory titles and operates pursuant to a CBA with the District.

145.     At all relevant times, Defendant ASAR has been recognized as the sole and exclusive bargaining unit representing both certificated and civil service administrative and supervisory titles and operates pursuant to a CBA with the District.

146.     At all relevant times, Plaintiff, Curry-Malcolm was a permanently certificated administrator and unit member of Defendant ASAR.

147.     Plaintiff met with Defendant ASAR numerous times throughout the 2015-2016, 2016-2017 school years regarding Defendant RCSD's breach of the employment contract and breach of the CBA.

148.     Plaintiff met with Defendant ASAR from July 2016 through December 2016, and during the 2016-2017 school year.  At no time during those meetings did Defendant ASAR inform Plaintiff that she could file her own grievance and at no time was Plaintiff informed regarding a grievance form and/or provided a grievance form to file a grievance from anyone.

149.     On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner,

subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

150.     Plaintiff was not aware or in knowledge of any formal grievance form of Defendant RCSD or Defendant ASAR and no such grievance form was ever shared with  the

151.     Plaintiff by the Defendant RCSD Superintendent of School or any of her designees or any ASAR representative and/or designee.

152.     Neither was there any such formal grievance form that an employee, including Plaintiff  where an employee, including on Defendant RCSD and/or Defendant ASAR's websites to date and/or during the relevant period.

153.     Neither did Deane-Williams, Dr. Cliby, Rowe, Harry Kennedy ("Kennedy"), Defendant RCSD's Chief of Human Capital Initiatives ("HCI") and/or his designee, and/or anyone else provide any grievance form at any time to the Plaintiff.

154.     It has been the past practice of the Defendant RCSD and Defendant ASAR to allow district employees to use informal or unofficial methods to file a grievance or grievances, including utilizing district email and/or via telephone conversations.

155.     It has been past practice of the Defendant RCSD and Defendant ASAR to file a grievance or grievances for a unit member without the unit member completing and/or filling out any type of grievance form, i.e., the ghost grievance form that was supposed to have existed that did not during the relevant period.

156.     If the Defendants had a grievance form, they did not at any time provide one to the Plaintiff and neither did either of them inform the Plaintiff that one existed or where she could obtain a copy. Defendant ASAR provided Plaintiff no training on the CBA.

[21]

157.     Defendants were inconsistent with the filing of a grievance process, applying adopted district employment practices, policies, procedures, and customs.

158.     Defendants set one standard for the Plaintiff and another for other members and/or non-minority employees of the school district and association in the process of filing of a grievance and/or grievances and in the administering of the terms, conditions, and privileges of employment.

159.     Plaintiff made numerous attempts to file a grievance and/or made numerous requests that Defendant ASAR file a grievance on her behalf and/or on the behalf of the association.

160.     Defendant ASAR refused and failed to file a grievance on Plaintiff's behalf and/or on behalf of the association and continued to allow the Defendant Rochester City School District to breach the parties CBA.

161.     Plaintiff has exhausted her administrative remedies. All conditions precedent to the institution of lawsuit (s) has/have been fulfilled and the lawsuits have been filed within ninety (90) days of receiving such right to sue letters from the EEOC.

## **PARTIES**

162.     Plaintiff, BERNICE CURRY-MALCOLM hereinafter "Plaintiff" or " Plaintiff, Curry-Malcolm" is a sixty-two year old Black/African American married female and citizen of the United States of America and member of the Baptist faith.

163.     Plaintiff, BERNICE CURRY-MALCOLM is a married female Black/African American citizen of the United States and resident of New York, Monroe County, Henrietta, New York.

164.     Plaintiff, BERNICE CURRY-MALCOLM is a Black/African American

married female individual and member of a protected class.

165.     Plaintiff, BERNICE CURRY-MALCOLM is a veteran educator with more than twenty-six years of educational experience which includes more than nineteen (19) years of experience in working with students with disabilities in the field of special education as a special education teacher and/or administrator.

166.     Defendant Rochester City School District is a municipal corporation existing under and conducting and engaging in and effecting commerce and doing business by virtue of the laws of the State of New York, County of Monroe and is located at 131 West Broad Street, Rochester, New York 14614.

28.     Defendant RCSD, is empowered to sue and be sued, and is a public educational institution and public school district in the City of Rochester, County of Monroe; State of New York who employ and continues to employ over and above more than five hundred (500) employees.

167.     As an employer and public educational organization, Defendant RCSD is subject to the jurisdiction of the New York State Human Rights Law ("NYSHRL" or "the Division"), Executive Law §290 *et seq.*; and the United States Equal Employment Opportunity Commission ("the EEOC") regarding unlawful discrimination.

168.     As an employer, Defendant RCSD is subject to the jurisdiction of the Division and EEOC under and by virtue of state and federal unlawful employment practices, as well as unlawful discrimination, harassment and retaliation under New York State Human Rights Law pursuant to New York State Human Rights Law, Executive Law §290 *et seq.*, §§ 296 (1)(a), (1)(c), (1)(h), 6 and 7, and by Title VII of the Civil Rights Act of 1964, amended, codified 42 U.S.C. Sections 2000e and 703 *et seq.* ("Title VII") and unlawful age discrimination under the

[23]

Age Discrimination and Employment Act of 1967 ("ADEA"), and 42 U.S.C. §§1983 and 1981 *et seq*.

169.     Defendant Barbara Deane-Williams ("Deane-Williams") was a high ranking salaried official who was appointed on July 18, 2016 by the Defendant Rochester City School District Board of Education as Superintendent of Schools within a supervisory role with decision making powers within the RCSD public educational organization and, as such, was responsible for the operation of the District.

170.     At all relevant times, Defendant Deane-Williams was employed by the Rochester City School District as Superintendent of Schools and serves at the pleasure of the Rochester City School District Board of Education ("RCSD BOE").

171.     Defendant Deane-Williams, female white, is sued here both in her personal and official capacities.

172.     Defendant Sandra Simpson ("Simpson") was a high ranking salaried official as Chief of Specialized Services and former Executive Director of Specialized Services within a supervisory role with decision making powers within the RCSD public educational organization and, as such, was responsible for the operation of the Department of Specialized Services of the District.

173.     At all relevant times, Defendant Simpson was employed by the Rochester City School District as Chief of Specialized Services and/or former Executive Director of Specialized Services and serves at the pleasure of the Superintendent of Schools and the Rochester City School District Board of Education.

174.     Defendant Simpson, female white, is sued here both in her personal and official capacities.

[24]

175.     Defendant Mary Pauly ("Pauly") was a high ranking salaried official and appointed by the Rochester City School District on May 15, 2017 as Executive Director of Specialized Services within a supervisory role with decision making powers within the RCSD public educational organization and, as such, was responsible for the operation of the Department of Specialized Services of the District.

176.     At all relevant times, Defendant Pauly was employed by the Rochester City School District as Executive Director of Specialized Services and serves at the pleasure of the Superintendent of Schools and the Rochester City School District Board of Education.

177.     Defendant Pauly, female white, is sued here both in her personal and official capacities.

178.     Defendant Teresa Root ("Root") was a high ranking salaried official within Central Office as Zone Director of Specialized Services in a supervisory role with decision making powers within the RCSD public educational organization.

179.     Root was responsible for the operation of the Department of Specialized Services in the areas of Central Services, Behavioral Specialist (s), Bilingual Evaluation Team, MATCH Team, Long-Term Suspension Manifestation Determinations, probationary and/or tenured CASE administrators on her caseload, as well as monitoring activities regarding NYSED Enforcement Action, NYSED Compliance Assurance Plans and State Complaints of the District, but not limited to.

180.     At all relevant times, Defendant Root was employed by the Rochester City School District as Central Office Committee on Special Education ("CSE")  and Central Services Zone Director of Specialized Services and serves at the pleasure of the Superintendent of Schools and the Rochester City School District Board of Education.

[25]

181.     At all relevant times, during the 2015-2016 school year, Defendant Root was Plaintiff, Curry-Malcolm's immediate and direct supervisor.

182.     At all relevant times, during the 2016-2017 school year, Defendant Root was Plaintiff's direct, immediate, and indirect supervisor based on her supervisory job duties, responsibilities, and operations as a Central Office Zone Director within the Department of Specialized Services.

183.     Defendant Root, female white, is sued here both in her personal and official capacities.

184.     Defendant Association of Supervisors and Administrators of Rochester ("Defendant ASAR") is an unincorporated association and local labor organization/union, the affiliate of School Administrators Association of New York State ("SAANYS").

185.     Defendant ASAR by and through SAANYS is empowered to sue and be sued, and existing under and conducting and engaging in commerce and doing business by virtue of the laws of the State of New York, County of Monroe, and which represents administrators and supervisors employed by Rochester City School District (" Defendant RCSD").

186.     ASAR is the sole and exclusive bargaining unit between the Rochester City School District and unit members and is located at 25 Washington Street, Rochester, New York 14614.

187.     As a labor organization, whose union representatives consists of administrative personnel employing more than four (4) persons and are salaried administrative employees of the Defendant RCSD who employs more than five hundred (500) employees, Defendant ASAR is subject to the jurisdiction of the Division and EEOC regarding unlawful discrimination.

188.     As a labor union and/or labor organization, Defendant ASAR is subject to the

[26]

jurisdiction of the New York State Human Rights Law ("NYSHRL" or "the Division"),
Executive Law §290 et seq.; and the United States Equal Employment Opportunity Commission
("the EEOC") under and by virtue of state and federal unlawful employment practices.

189.     As a local labor organization, Defendant ASAR in subject to the jurisdiction of
the New York State Human Rights Law pursuant to New York State Human Rights Law,
Executive Law §290 et seq., §§ 296 (1)(a), (1)(c), (1)(h), 6 and 7, and by Title VII of the Civil
Rights Act of 1964, amended, codified 42 U.S.C. Sections 2000e and 703 et seq. ("Title VII")
and unlawful age discrimination under the Age Discrimination and Employment Act of 1967
("ADEA"), and 42 U.S.C. §§1983 and 1981 et seq., under and by virtue of the state is a "person"
within the meaning of 42 U.S.C. §1983 and NYSDHRL §292, *et seq*.

190.     At all relevant times, Defendant ASAR was a local labor union of Defendant
Rochester City School District administrative personnel.

191.     Timothy Cliby and John Rowe are salaried employees within RCSD public
educational organization.

192.     At all relevant times, Plaintiff was a fulltime regular "active" district employee
and unit member within the local labor union organization, Defendant ASAR.

193.     At all relevant times, Root was in a supervisory role within Defendant RCSD
and was a unit member within the local labor union organization, Defendant ASAR.

194.     At all relevant times, Defendant Dr. Timothy Cliby ("Dr. Cliby") has served as
ASAR's duly elected President with decision making powers and is a salaried employee of the
Defendant RCSD but is on leave from his position in the District to serve exclusively as an
ASAR officer serving at the pleasure of the Superintendent of Schools.

195.     Defendant Dr. Cliby's salary is paid by the Defendant RCSD.

[27]

196.     Defendant Dr. Cliby, male white, is sued here both in his personal and official capacities.

197.     At all relevant times, Defendant John Rowe ("Rowe") has served as ASAR's duly elected Vice President with decision making powers and is a salaried employee of the RCSD and is on leave from his position as Executive Director of Teaching and Learning to serve exclusively as an ASAR officer serving at the pleasure of the Superintendent of Schools.

198.     Defendant Rowe's salary is paid by the Defendant Rochester City School District.

199.     Defendant Rowe, male white, is sued here both in his personal and official capacities.

200.     At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the United States, and the State of New York, and under the authority of their respective positions or offices with decision making powers, and as such as salaried employees of the Defendant RCSD empowered by Defendant RCSD and Defendant ASAR.

## STATEMENT OF FACTS

201.     Plaintiff commenced several discrimination cases against her former employer, Rochester City School District based on race, color, age, and/or and sex (female, excludes sexual harassment and sexual violence)/gender (female) in the Court on December 19, 2017 (17-cv-6873DGL), complaint dismissed with prejudice, June 18, 2018 (18-cv-6450DGL), complaint dismissed with prejudice, and March 3, 2020, i.e., July 22, 2020 (20-cv-6537DGL), complaint dismissed.

202.     Plaintiff commenced a discrimination lawsuit against her local labor union,

Association of Supervisors and Administrators of Rochester ("ASAR") and former employer, Rochester City School District based on race, color, age, and sex (female, excludes sexual harassment and sexual violence)/gender (female) in this Court on December 20, 2017 (17-cv-6878DGL), complaint dismissed with prejudice, and leave-to-file sanction imposed and entered.

203.     Since the complaints filed, Plaintiff has been subjected to a continued pattern and practice of discrimination and retaliation by Defendant RCSD for complaining of and opposing discrimination, including during the 2017-2018 school year and beyond.

204.     One or more of the acts complained of, including the ones that are complained of subsequently to the filing of charges of discrimination and the filing of her original pleadings before this Court relates back to the original charges of discrimination and original pleadings in Plaintiff's lawsuits.

205.     Plaintiff has been denied her rights pursuant to the Collective Bargaining Agreement ("CBA") and Education Law to due process of law and equal protection.

206.     Defendant RCSD had no legitimate reason for the actions it took since race and age was the "but for" reason for Plaintiff termination.

207.     Any reason (s) proffered by Defendant RCSD is pre-textual as a matter of law.

208.     Plaintiff, Curry-Malcolm holds a Certificate of Advanced Study Degree in Educational Administration from State University of New York ("SUNY") College at Brockport with permanent certification within the area of School District Administrator obtained in 2007.

209.     Plaintiff, Curry-Malcolm has earned nine (9) hours toward a doctoral degree in Educational Leadership with a concentration in Special Education from University of Rochester, Margaret Warner Graduate School of Education and Human Development, those 9 hours were obtained in fall of 2008 through summer of 2009.

210.        Plaintiff, Curry-Malcolm holds New York permanent public school teacher certifications in good standing within the areas of Business and Distributive Education and Special Education obtained in 1998.

211.        At all relevant times, Plaintiff, Curry-Malcolm was a certificated administrator and a permanently certified administrator in good standing with the State of New York, Department of Education.

212.        Plaintiff, Curry-Malcolm holds a Bachelor of Business Administration Degree within area of General Business, a Bachelor of Science Degree in Education, and a Master of Education Degree within the area of Special Education, all from Delta State University ("Delta State") obtained from 1984 through 1992.

213.        Plaintiff, Curry-Malcolm hold certifications in good standing within the areas of Business Education (7-12), Educational Handicapped (K-12) and Career Level Administrator in the State of Mississippi.

214.        Plaintiff, Curry-Malcolm entered an employment contractual agreement with the Defendant Rochester City School District on August 21, 2015 holding the position of a Coordinating Administrator of Special Education ("CASE").

215.        Plaintiff's placement within Defendant RCSD's public educational organization was that of a Central Office Committee on Special Education ("CSE") CASE administrator. Plaintiff was a CSE chairperson.

216.        On August 27, 2015, at its regularly scheduled board meeting, the Rochester City School District Board of Education ("RCSD BOE") appointed Plaintiff, Curry-Malcolm to the position of CASE as a regular fulltime 'active" employee.

217.        Plaintiff's first day of work within the Defendant RCSD's public

[30]

educational organization in her newly hired position as a CASE, tenured area, Bracket IV was August 30, 2015.

218.     Plaintiff, Curry-Malcolm was previously employed  and had a contractual relationship with the public education organization Defendant RCSD from August 31, 1998 through September/October 2000, i.e., July 1, 1998 through June 30, 1999 school year, July 1, 1999 through June 30, 2000 school year, and July 1, 2000 through September/October 2000 of the July 1, 2000 through June 30, 2001 school year, as a fulltime regular "active" special education teacher.

219.     Plaintiff, Curry-Malcolm worked as a special education teacher within the school district's  Senior High Alternative Program of Education ("SHAPE") holding the district's position and title of consultant special education teacher.

220.     On August 31, 1998, Plaintiff, Curry-Malcolm entered a contractual relationship with the Rochester City School District and was a unit member of the Rochester Teachers Association ("RTA"), local labor union, the affiliate of the New York State United Teachers' Union ("NYSUT").

221.     Plaintiff, Curry-Malcolm did not at any time work for Defendants Rochester City School District as self-employed, an itinerant teacher and/or third-party contractor/administrator.

222.     Plaintiff worked as a special education teacher within the Defendant RCSD public educational organization from August 31, 1998 through September/October 2000.

223.     Plaintiff did not at any time work for the Honeoye Falls-Lima Central School District ("HF-L") as self-employed, an itinerant teacher and /or third-party contractor/administrator.

224.      Plaintiff, Curry-Malcolm was not at any time employed by the Defendant Rochester City School District from approximately 1998 to 2004 as an itinerant teacher.

225.      Plaintiff, Curry-Malcolm was employed as a fulltime regular "active" employee with HF-L beginning on January 8, 2001 through June 2008 holding the title of special education teacher in the tenured area of Special Subject Tenure Area Gen Spec Ed.

226.      Plaintiff Curry-Malcolm was granted tenure by HF-L on or about September 1, 2004 after completing a successful three-year probationary period as a full-time regular "active" employee.

227.      At all relevant times, Plaintiff, Curry-Malcolm was a full time regular "active" employee within the Defendant RCSD public educational organization holding the probationary title of Coordinating Administrator of Special Education ("CASE"), tenured area Bracket IV.

228.      At all relevant times, Plaintiff, Curry-Malcolm was under a contractual relationship formed with the school district on August 21, 2015 and the contractual relationship formed as a unit member to the parties Collective Bargaining Agreement ("CBA") between Defendant Rochester City School District and Defendant Association of Supervisors and Administrators of Rochester ("Defendant ASAR").

229.      At all relevant times, in compliance with the terms and conditions of her employment and the terms and conditions of the CBA, Plaintiff, Curry-Malcolm was owed a care of standard of duty and was entitled to a good faith, fair, adequate, equal, timely, and competent duty of fair representation by Defendant ASAR.

230.      At all relevant times, Defendant RCSD and Defendant ASAR owed Plaintiff a special duty to protect her from unlawful discrimination, harassment, and retaliation.

231.      Plaintiff job duties and responsibilities, included, but were not limited to,

[32]

providing Committee on Special Education ("CSE") service to students with disabilities. Plaintiff was the Central Office CASE CSE Chairperson for nine (9) school district programs.

232.     As the CSE chairperson, Plaintiff did not make decisions independently or in isolation. The CSE committee consisted of a group of professionals and professional experts in their own rights.

233.     CSE decision are made as a team, but the RCSD Defendant did have a habit of deviating from that of the Committee, including Deane-Williams.

234.     There were times after the CSE committee meeting in which the Plaintiff was chairperson that Root, Kittelberger, and Deane-Williams or the district would unilaterally change the decision from the one that was made by the members of the CSE committee to their own.

235.     The CSE team could include, but not limited to, the parent (s) of students with disabilities, students with disabilities where applicable depending on age, an advocate (s) for students with disabilities, school nurse (s) and/or medical professional (s), including a doctor where applicable, lawyer (s) where applicable, teacher (s), psychologist (s), behavioral specialist(s), occupational therapist (s), physical therapist (s), audiologist (s), program and/or school administrator (s), and guidance counselor(s).

236.     Plaintiff as CSE chairperson and the CSE committee decisions were made based on the individualized needs and individualized educational program needs of the student with disabilities.

237.     During the 2015-2016 school year, Plaintiff was responsible for nine (9) school district school programs. Those school programs included Youth and Justice's New Beginning, Water Tower, Northaven, Monroe County Correctional Facility, Monroe County Detention

Center, Strong Behavioral Health, and Monroe County Jail programs, as well as North Star and LyncX Academy.

238.      Plaintiff was also responsible for the supervision and performance evaluations of teachers and school psychologists within the programs that she served, scheduling CSE meetings for students with disabilities, home visits, annual reviews, re-evaluations, program reviews, initials, placement, providing professional development to training Youth and Justice, North Star and LyncX Academy teaching staff, and a host of other related duties and responsibilities regarding CSE.

239.      Plaintiff was the only CASE with nine (9) programs. All other CASE administrators were assigned one, two or three schools and/or programs during the 2015-2016 school year.

240.      During the 2016-2017 school year, the RCSD Defendant involuntarily transferred the Plaintiff in February 2017.

241.      During the 2016-2017 school year, Plaintiff had three different direct and immediate Supervisors, including Marica Pease ("Pease"), Director of Alternative Special Education Programs at NorthStar(August 2016 through November 2016); Joseph Capezzuto ("Capezzuto"), Zone Director of Specialized Services (November 2016 through February 17,2017), and Kelly Sanson ("Sanson"), Zone Director (February 27, 2017 through early June 2017.

242.      By June early June 2017, Plaintiff did not have a direct or immediate supervisor to report to.

243.      Plaintiff was not evaluated during the 2016-2017 school year.

244.      The Defendant RCSD did not provide Plaintiff with another immediate and direct

[34]

supervisor after removing Sanson without the Plaintiff knowledge.

245.     Sanson did not let the Plaintiff know that she was no longer her immediate and direct supervisor and neither did she tell Plaintiff that she was moved to an Assistant Principal position. Sanson neither Defendant RCSD conducted a final performance evaluation of the Plaintiff for the 2016-2017 school year.

246.     Other impacted probationary CASE administrators received a final performance evaluation for the 2016-2017 school year so that they would not lose any tenure credits, and/or benefits.

247.     Plaintiff made inquiry regarding the 2016-2017 final performance evaluation process but did not receive an answer from the school district or Sanson or ASAR.

248.     At all relevant times, prior to the Defendants discriminating against Plaintiff, she always performed her job duties satisfactorily and enjoyed praises and positive work performance comments from the teachers, staff, students, parents, and administrators that she worked with, including her mentor Laney Johnson ("Johnson"), Assistant Principal of School #15.

249.     At the beginning Root and Kittelberger were supported of Plaintiff, but that changed and both Root and Kittelberger began this relentless unwarranted attack on Plaintiff based on her color, race, age, and sex/gender.

250.     During the 2015-2016 school year, Plaintiff informed the RCSD Defendant and Defendant ASAR of Root's harassing and discriminatory attacks against her.

251.     On May 1, 2016, Plaintiff sent Christopher Suriano ("Suriano"), then Executive Director of Specialized Services an email and copied it to Root regarding Root's false, harassing, and discriminatory attacks against her.

[35]

252.      Root was furious and displeased with the Plaintiff for contacting Suriano.

253.      Suriano tried to protect the Plaintiff from Root and the Defendant RCSD.

254.      Suriano left the district on or about September 20, 2016.

255.      Suriano told the Plaintiff that HCI would take over her concerns regarding Root.

256.      Defendant RCSD discriminated against Plaintiff for complaining of and opposing Root's harassing and discriminatory actions against her, on July 27, 2016 Root rated Plaintiff as "developing" on her final performance evaluation to get back at her and to protect Kittelberger, a younger female white, who did not complete all her work.

257.      Plaintiff complained during the 2016-2017 school year that her final performance evaluation was not correct and that it was a ruse. Plaintiff would not find out until 2021 that Root first rated her as highly effective and not developing.

258.      Root, Defendant RCSD and Defendant ASAR were aware and in full knowledge that a 56 final performance evaluation rating score was highly effective and not developing.

259.      Root, Defendants RCSD and ASAR worked together and agreed to cover Root, RCSD and ASAR.

260.   Root and the defendants deviated from the policies, practices, customs, and procedures of the district and union which required that to give any administrator an ineffective or developing rating, the supervisor would need to inform that administrator before April 1, of a corresponding year.

261.      Root did not inform Plaintiff of a developing rating by April 1, 2016.

262.      Plaintiff did not find out until July 27, 2016 during the final performance evaluation meeting with Root that she had a developing final performance evaluation rating.

263.      ASAR did not attend the meeting even though Plaintiff made request that they do

[36]

so.

264.     Plaintiff spoke with Rowe regarding the situation and her concerns regarding Root. Rowe told Plaintiff to go along to see what happens and then let him know afterwards.

265.     As directed by Rowe, after the meeting with Root, Plaintiff informed Defendant ASAR regarding what transpired during the meeting, but that did not resolve or remedy anything.

266.     The meeting with Root was horrible. Root appeared to try to provoke the Plaintiff.

267.     Root got out of her chair from behind her desk, came up to where the Plaintiff was sitting and stood within close proximity making gestures which suggested anger and intimidation towards Plaintiff.

268.     During the 2015-2016 school year, Plaintiff informed Root and Capezzuto regarding  Kariann Kittelberger's ("Kittelberger") ongoing hostility and discriminatory attacks against her.

269.     By December 2016, Defendant RCSD and Defendant ASAR knew of the harassing and discriminatory unwelcomed, unwanted, and unwarranted attacks by Root and Kittelberger against the Plaintiff.

270.     Instead of bringing speedy remedy to the situation, Defendant RCSD and Defendant ASAR extended the harassing and discriminatory actions into the 2016-2017 school year without any resolution.

271.     After Plaintiff first complained of and opposed Defendant RCSD's unlawful employment practices and discrimination, she was subjected to an unfavorable performance evaluation in July 2016.

272.     After Plaintiff filed her first internal complaint of discrimination on or about

[37]

December 26, 2016, she was subjected to a coalition charged hostile work environment and was subjected to a pattern and practice of unlawful discrimination and retaliation against her up to including her termination on or about June 30, 2017.

273.    After Plaintiff filed her first internal complaint of discrimination in December 2016, on or about February 6, 2017, unbeknownst to Plaintiff, Defendant RCSD changed her name on its Staffing Form/Recommendation for Employment to Bernice Malcom and placed her address as her social security number.

274.    Unbeknownst to Plaintiff, Defendant RCSD placed Plaintiff in the job title of a special education teacher and changed her status as a rehire with placement under the RTA contract in the position of special education teacher.

275.    Defendants RCSD demoted Plaintiff.

276.    On February 27, 2017, Plaintiff was involuntary transferred from North Star and All City High School and demoted in her supervisory roles and responsibilities.

277.    After Plaintiff filed her second internal complaint of discrimination on or about March 3, 2017, she was retaliated against and subjected to a hostile work environment, disparate treatment and continued discrimination and retaliation.

278.    Plaintiff filed a charge of discrimination with the Division with dual filing with the EEOC on March 16, 2017.

279.    After the filing of Plaintiff's March 16, 2017 discrimination charge, on March 22, 2017, Deane-Williams, and Defendant RCSD targeted the probationary CASE administrator employee group in which Plaintiff was a probationary CASE administrator for layoff.

280.    After Plaintiff filed a charge of discrimination with the Division on or about March 16, 2017, she was terminated on June 30, 2017.

[38]

281.     Plaintiff was terminated for the pre-textual reason of the 2017-2018 budget.

282.     Defendant RCSD gave plaintiff another pre-textual reason of restructuring of special education.

283.     Defendant RCSD gave plaintiff another pre-textual reason of her being the least senior in her tenured area of CASE.

284.     The pretext was evident, and the reason (s) proffered by Defendant RCSD is pretextual as a matter of law.

285.     Plaintiff was the only impacted probationary CASE administrator that was terminated on June 30, 2017.

286.     Plaintiff was the oldest impacted probationary CASE administrator that was terminated on June 30, 2017.

287.     Plaintiff was the only impacted probationary CASE administrator who lost her job on June 30, 2017.

288.     Plaintiff was the only impacted probationary CASE administrator placed on the Preferred Eligibility List. ("PEL").

289.     All other impacted probationary CASE administrators either remained in employment as probationary CASE administrators or were freely transferred without application to higher-level administrative positions, including Assistant Principals or Directors within Defendant RCSD  public educational organization or resigned.

290.     None of the tenured CASE administrators were impacted by the 2017-2018 budgetary layoff.

291.     Thirty-eight (38) CASE administrators were not impacted by the 2017-2018 budgetary layoff.

[39]

292.     Twenty-two (22) probationary CASE administrators were not impacted by the 2017-2018 budgetary layoff.

293.     Plaintiff was not number thirty (30) of the probationary CASE administrators impacted by the 2017-2018 budgetary layoff.

294.     Plaintiff was not number eleven (11) of the probationary CASE administrators impacted by the 2017-2018 budgetary layoff.

295.     But for Defendant RCSD's deviation from its policies and procedures and past practices, including following of the same process used to removed impacted probationary CASE administrators' name from the list, Plaintiff would not have been impacted by the 2017-2018 layoff.

296.     After Plaintiff filed a charge of discrimination complaint with the Division with dual filing with the EEOC on or about April 25, 2017, the Defendant RCSD continued its pattern and practice of discrimination and retaliation against Plaintiff up to including refusing and failure to conduct a final performance evaluation for the 2016-2017 school year.

297.     In retaliation, Defendant RCSD stop paying Plaintiff's union dues.

298.     After Plaintiff filed a charge of discrimination complaint with the Division with dual filing with the EEOC on or about August 24, 2017, the Defendant RCSD continued its pattern and practice of discrimination and retaliation against the Plaintiff up to including after termination of her employment by intentionally moving Plaintiff further down the PEL and by making her number thirty (30) of thirty-eight (38) CASE administrators for the purpose of recall.

299.     Between July 1, 2017 and November 19, 2017, Defendant RCSD did not recall Plaintiff to any vacancies in which she was qualified and certificated.

300.     Between July 1, 2017 and November 19, 2017, Defendant RCSD did not freely

[40]

transfer, move, promote, and/or recall Plaintiff to any positions in which she was qualified and certificated for.

301.    Defendant RCSD wanted Plaintiff to make application for a position, but did not require the same of other similarly situated employees and/or employees.

302.    Defendant RCSD did not require that other impacted probationary CASE administrators or employees make application to positions in which they were freely transferred and/or promoted to.

303.    Defendant RCSD did not promote Plaintiff.

304.    Defendant RCSD transferred, moved, and/or promoted other employees to positions in which they were neither qualified and/or neither certificated for.

305.    After Plaintiff filed her charges of discrimination with the Division with dual filing with the EEOC, Defendant RCSD continued in its discrimination and retaliation against the Plaintiff up to providing refusing and failing to pay Plaintiff's retirement loan at the same time that it paid other similarly situated employees' retirement loan.

306.    Defendant RCSD did not pay Plaintiff's retirement loan even though the school district withheld the money from her salary.

307.    Defendant RCSD informed the New York State Teachers' Retirement System that Plaintiff changed her name.

308.    The New York State Teachers' Retirement System informed Plaintiff by letter dated April 12, 2017, that Defendant RCSD had informed the System that Plaintiff has changed her name.

309.    After Plaintiff filed her discrimination complaint with the Court, the Defendant

[41]

RCSD continued in its pattern and practice of discrimination and retaliation against her up to including, but not limited to her wrongful termination on or about April 23, 2018.

310.     After Plaintiff filed her discrimination with the Court, up to including post-employment retaliation, Defendant RCSD in retaliation caused Plaintiff service credits, benefits, and salary toward her pension, up to including the 2017-2018 school year.

311.     Plaintiff did not at any time apply for and/or make application for retirement.

312.     Plaintiff is an active member of the New York State Teachers' Retirement System and has been from September 1997 to present.

313.     One or more of the acts subsequently complained of after Plaintiff filed her discrimination complaints with the Court, Defendant RCSD continued in its pattern and practice of discrimination and retaliation against her up to including providing false information to the New York State Teachers' Retirement System during the 2016-2017 and 2017-2018 school years. See, Monroe County Clerk's Index No.: 2019-4349.

314.     Defendants deprived Plaintiff of her constitutional rights while acting under color of law.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND: CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT RACE DISCRIMINATION**

315.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

316.     Defendant RCSD discriminated and retaliated against Plaintiff based on her race (Black/African American) and color (Black/African American) in violation of her rights to make an enforce employment contracts that are equal to contracts that Defendant RCSD grants to white employees, in violation of 42 U.S.C. §1981.

317.     Defendant have engaged in intentional racial discrimination in the terms, conditions and privileges of the Plaintiff's employment, including, but mot limited to, Plaintiff's compensation, opportunity for promotion, opportunity for obtaining a lateral position, termination, retirement benefits and hiring.

318.     Defendant conduct, as described herein was malicious and oppressive, and done with conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employer's economic power over its employees.

319.     Defendants ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to exemplary damages from all Defendants.

320.     The employment practices of defendant in enforcing its policies in a disparate fashion, as described herein are not based upon a reasonable factor other than race and are in fact the "but for" reason for the actions taken herein.

321.     Defendant RCSD terminated Plaintiff on account of her race (Black/African American), color (Black/African American), age (58 years old when she filed her first charge of discrimination), and sex /gender (female),  subjecting her to working in a work environment that was hostile to her on the basis of her race, color, sex/gender, and/or age, and has retaliated against her including up to post-employment retaliation for complaining of discrimination and opposing discrimination in violation of Title VII and the New York State Human Rights Law.

322.     As a direct and proximate result of Defendant' willful, knowing, and intentional

[43]

discrimination against her, Plaintiff suffered and continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**
**29 U.S.C. §621 AGAINST ROCHESTER CITY SCHOOL DISTRICT**
**AGE DISCRIMINATION**

323.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if  fully set forth herein.

324.    Defendant RCSD discriminated against Plaintiff because of her age in willful violation of the ADEA by subjecting her to materially adverse employment conditions as a result of her age.

325.    The employment practices of Defendant RCSD described herein discriminates against older employees such as the Plaintiff and favors younger and/or white employees. The employment practices so described are not based upon a reasonable factor other tan age and in fact the "but-for" reason for the actions taken herein.

326.    Defendant RCSD has purposely engaged in age discriminatory practices with the full knowledge that in doing so it was discriminating against its older employees, in particular, the Plaintiff, without regard for the rights of those employees under the ADEA.

327.    Defendant RCSD terminated Plaintiff on account of her age, and thereby violated her rights to equal employment opportunity as protected by the ADEA.

[44]

328.       As a direct and proximate result of Defendant' willful, knowing, and intentional

discrimination against her, Plaintiff is thereby entitled to liquidated damages and attorney fees

under the ADEA even as a *pro se* litigant who represents self.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:
LEAVE TO AMEND:
CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW,
EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT
RACE DISCRIMINATION**

329.       Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if  fully

set forth herein.

330.       Defendant RCSD through its highest ranking agent, Superintendent Deane-

Williams, engaged in a pattern of unremedied discrimination on the basis of Plaintiff's race

(Black/African American), in violation of New York State Human Rights Law, Executive

Sections 290, *et seq*.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:
LEAVE TO AMEND:
CLAIMS UNDER TITLE VII  OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")
42 U.S.C. §2000E, ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT
RETALIATION**

331.       Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if  fully

set forth herein.

[45]

332.     Plaintiff engaged in the good faith protected activity of opposing discrimination. Defendant RCSD had knowledge of Plaintiff protected activity.

333.     Defendant RCSD's conduct constitutes an adverse employment action which would dissuade a reasonable person in the Plaintiff's position from making a complaint of discrimination.

334.     The adverse employment actions were caused by Plaintiff's protected activity.

335.     The stated reason for Defendant RCSD's conduct were not the true reasons but instead, were pretext to hide its retaliatory animus.

336.     As a direct and proximate cause of Defendant RCSD's unlawful retaliation, Plaintiff has sustained and will continued to sustain, from monetary damages and other compensable damages.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND: CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621, AGAINST THE ROCHESTER CITY SCHOOL DISTRICT RETALIATION**

337.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

338.     Defendant Rochester City School District discriminated and retaliated against Plaintiff because of her age in willful violation of the ADEA by subjecting Plaintiff to materially adverse employment conditions as a result of her age.

339.     Defendant Rochester City School District retaliated against Plaintiff because she

[46]

previously opposed discrimination by the Defendant in during the 2015-2016, and 2016-2017, school years. Defendant Rochester City School District retaliated against Plaintiff by wrongfully terminating Plaintiff's employment, under the guise of a "layoff" in June 2017.

340.     Defendant Rochester City School District retaliated against Plaintiff because she previously opposed discrimination by the Defendant in during the 2016-2017 and 2017-2018 school years. Defendant Rochester City School District retaliated against Plaintiff by wrongfully terminating Plaintiff's employment, under the guise of "unsatisfactory performance" in April 2018.

341.     Defendants deprived Plaintiff of her constitutional rights while acting under color of law.

342.     As a direct and proximate result of Defendants' unlawful and willful age discrimination and retaliation against Plaintiff, the Defendants' disparate treatment of Plaintiff because of her age, Plaintiff has sustained damages in an amount to be determined at trail, including, but not limited to, lost salary and wages, fringe benefits, and other forms of compensation, as well as loss of career opportunity, advancement, lost retirement benefits, and retirement seniority, and other respects, all in amounts yet to be determined.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:
LEAVE TO AMEND:
CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW,
EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT
RETALIATION**

343.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in

[47]

numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

344.    Defendant RCSD engaged in a pattern of illegal retaliation in violation of New York State Human Rights Law ("NYSHRL") Executive Sections 290, *et seq*.

345.    Plaintiff engaged in a protected activity when she in good faith informed her employer that she was subject to discrimination based on her race, color, age and sex/gender by its employees, officers, supervisors, and/or agents, but not limited to.

346.    Defendants willfully, knowingly and intentionally discriminated against Plaintiff and terminated her employment in retaliation to Plaintiff's continued and expressed concerns about being unfairly given a developing rating on her July 2016 final performance evaluation.

347.    Defendant conduct, as described herein was malicious and oppressive, and done with conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employer's economic power over its employees

348.    As a direct and proximate result of Defendant' willful, knowing, and intentional discrimination against her, Plaintiff suffered and continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")**
**42 U.S.C. §2000E, ET SEQ., AGAINST ASAR**
**RACE DISCRIMINATION**

349.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in

[48]

numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

350.     Defendant ASAR's refusal to provide representation to Plaintiff as a union member was because of her race (Black/African American).

351.     Defendant ASAR conduct was intentional discrimination.

352.     Defendant ASAR failed and refused to provide Plaintiff a fair duty of representation because of her race (Black/African American).

353.     Plaintiff was an administrator and Black/African American female unit member of ASAR.

354.     Defendant ASAR discriminated against Plaintiff because of her race (Black/African American)

355.     Plaintiff made numerous requests that Defendant ASAR file a grievance and/or grievances on her behalf and/or on behalf of the association.

356.     Defendant ASAR refused and failed to file a grievance on Plaintiff's behalf and/or on the behalf of the association in the same manner that it did and/or would have done for non-minority members.

357.     Defendant ASAR showed disparate and more favorable treatment to similarly situated unit members that were not in the protected group, including, but not limited to Jason George, male, white, age 35; Rosa Bellone, female, white, age 37, Yajaira Walker (now Yajaira Nguyen), female, white, age 30.

358.     Plaintiff made grievance (s) as required under her employment contract and exhausted her administrative remedies.

359.     Defendants deprived Plaintiff of her constitutional rights while acting under color

[49]

of law and discriminated against her with malice or reckless indifference to her federally

protected rights.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**
**29 U.S.C. §621  AGAINST ASAR**
**AGE DISCRIMINATION**

360.        Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if  fully

set forth herein.

361.        Defendant ASAR discriminated against Plaintiff because of her age.

362.        Defendant ASAR allowed the Defendant RCSD to discriminate against Plaintiff

because of her age.

363.        Defendant ASAR allowed Defendant RCSD to terminate Plaintiff on account of

her race and age.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW,**
**EXECUTIVE LAW §290 ET SEQ., AGAINST ASAR**
**RACE DISCRIMINATION**

364.        Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if  fully

set forth herein.

365.     Defendant ASAR directly participated in the discrimination giving rise to the discrimination claims arising from the Defendant Rochester City School District's discrimination and retaliation against Plaintiff.

366.     Defendant ASAR conduct was intentional discrimination.

## AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND: CLAIMS UNDER U.S.C. §1983 AGAINST ALL DEFENDANTS EQUAL PROTECTION

367.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

368.     Defendant RCSD deprived Plaintiff of her constitutional rights while acting under color of law.

369.     Defendant ASAR deprived Plaintiff of her constitutional rights while acting under color of law.

370.     The challenged acts complained of were performed pursuant to Defendant RCSD's policy or custom.

371.     Defendant RCSD had a policy or custom of discriminating against members of a protected class in violation of Sections 1981 and 1983.

372.     Defendants were personally involved in the challenged acts complained of.

**Defendant Deane-Williams**

373.     In February 2107, Capezzuto told the Plaintiff that "The Superintendent was

[51]

playing a game". Capezzuto also told Plaintiff that a high-ranking official gave Root directives to change her final performance evaluation.

374.     Upon information and belief, Plaintiff believes that Defendant Deane-Williams was that higher ranking official who empowered Root and gave order to Root to change Plaintiff's July 2016 final performance evaluation.

375.     Defendant Deane-Williams knew that Root had rated Plaintiff as highly effective.

376.     Defendant Deane-Williams knew that the Defendant RCSD had changed the Plaintiff's name in February 2017.

377.     Defendant Deane-Williams knew that Plaintiff was not affected as a probationary CASE administrator regarding the 2017-2018 budgetary process.

378.     Defendant Deane-Williams, Defendant RCSD and Defendant ASAR targeted the probationary CASE employee group in which the Plaintiff was an employee and did not target any other employee group whether tenured and/or probationary for layoff.

379.     Defendant Deane-Williams, Defendant RCSD and Defendant ASAR entered a memorandum of understanding to protect the tenured CASEs in tenured area, Bracket IV. Defendant Deane-Williams, Defendant RCSD and Defendant ASAR, during that agreement continue to pay tenured CASE administrators although tenured area Bracket IV employees were paid under tenured area Bracket III (Assistant Principals) with all the benefits, bells and whistles and paid the probationary CASEs under the teacher contract.

380.     Defendant Deane-Williams, Simpson, Pauly, Kennedy, Cliby, Rowe, Defendant RCSD and Defendant ASAR with their decision making powers caused a negative and adverse impact on Plaintiff's employment and contributed to her termination.

381.     Defendants allowed and permitted probationary CASEs to continue to work

[52]

during Summer Learning (July 1, 2017 through August 2017) as probationary CASEs, including Bonnie Ellis ("Ellis"), female white age 45, Samantha Brody ("Brody"), female white age 45, Rosa Bellone ("Bellone"), female white, age 37, Melinda Hyde ("Hyde"), Lakisha Wilson, female black age 35, Davina McLean-Randal, female black, age 36, Kristal Shambo (now "Haines"), female white, age 37, Yajaira Nguyen ("Nguyen"), female white, age 30, and Jason George ("George"), male white, age 35, Marissa Nicholson ("Nicholson"), female white, age 40, but not limited to.

382.    Defendant Deane-Williams knew what she was doing was wrong and should have known that what she was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

383.    Defendant Deane-Williams was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie that she helped to create, promote and advance based on Plaintiff's race and age and based on her own personal and self-serving interest as Superintendent of Schools.

384.    Defendant RCSD empowered and gave Root the resource and tools that she needed to unlawfully change Plaintiff's final performance evaluation from highly effective to developing and forced the Plaintiff into a rebuttal process that she did not have to be subjected to and in turn also created unconscionable and intolerable hostile work environment in the process.

385.    Defendant Deane-Williams added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race and age.

386.    Defendant Deane-Williams was instrumental in the decision making process to

[53]

place Kittelberger at North Star.

387.      **Defendant Simpson** in her official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff. Simpson was personally involved based on her own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

388.      Defendant Simpson as the Chief of Specialized Services and former Executive Director of Specialized Services  did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Simpson's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

389.      Defendant Simpson empowered and engaged in the creation of a hostile work environment during the 2016-2017 school years.

390.      Defendant Simpson knew what she was doing was wrong and should have known that what she was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

391.      The RCSD Defendant rewarded Simpson by promoting her from Interim Executive Director of Specialized Services to Chief of Specialized Services.

392.      On February 27, 2017, Defendant Simpson told Plaintiff that she was removed as North  Star's CASE because she did not do well there, and she was not successful.

393.      Defendant Simpson through her decision making powers caused a negative and adverse impact on Plaintiff's employment and contributed to her termination

394.      Defendant Simpson and Defendant RCSD gave numerous reasons why Plaintiff

was removed from North Star, (1) she was not successful and did not do well (Simpson); (2) "the new head of Special Education, Sandra Simpson, determined Ms. Malcolm's services were best utilized in another area"(Attorney Crane);  (3) "Sandy Simpson has informed me that due to the recent loss of a special education coordinator at School No. 46 and the urgent need for assistance with the 4-go-5 evaluations at Central Office, that you were transferred from North Star to assist in these capacities" (Kennedy"); and (4) as referenced herein regarding Simpson email to the Principal of School No. 46.

395.     Ellis was the CASE administrator at No. 46 School. Plaintiff did not work with 4-go-5 evaluations. Root replaced her and chose Stephanie Thomas, tenured CASE, younger female white, to work with 4-go-5 evaluations.

396.     Defendant RCSD also gave numerous reasons why Plaintiff was laid off or terminated, (1) due to budget reductions for the 2017-2018 school year (Kennedy); (2) due to special education reorganization (Kennedy); (3) she was the least senior in tenure area, Bracket IV (Kennedy), and (4) unsatisfactory job performance (in school district submission during November 2018 Division Hearing).

397.     Defendant Simpson added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race and age.

398.     Defendant Simpson was instrumental in the decision making process to place Kittelberger at North Star.

399.     **Defendant Pauly** in her official capacity intentionally and deliberately engaged in

[55]

and participated in the violation of the statutory and constitutional rights of the Plaintiff. Pauly was personally involved based on her own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

400.    Defendant Pauly as Executive Director of Specialized Services did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Pauly's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

401.    Defendant Pauly empowered and engaged in the creation of a hostile work environment during the 2016-2017 school years.

402.    Defendant Pauly in her racial discrimination and personal attacks against Plaintiff became officially and personally involved by and through her decision making to assist in the termination of Plaintiff employment.

403.    In May 2017, Pauly sent Plaintiff an email for a staff meeting. When Plaintiff arrived at the meeting it was not a staff meeting, but rather a disciplinary meeting. Sanson joined Pauly.

404.    When Plaintiff asked that her union be present, Pauly refused and continued to make false allegations against the Plaintiff and threatened to put a counseling memorandum in her file.

405.    Defendant Pauly did not waste anytime joining in and adding to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race, and age.

406.    **Defendant Root** in her official capacity intentionally and deliberately engaged in

[56]

and participated in the violation of the statutory and constitutional rights of the Plaintiff. Root was personally involved based on her own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

407.    Defendant Root as Zone Director of Specialized Services did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Root's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

408.    Defendant Root empowered and engaged in the creation of a hostile work environment during the 2015-2016 and 2016-2017 school years.

409.    Defendant Root in her racial discrimination and personal attacks against Plaintiff became officially and personally involved by and through her decision making to assist in the termination of Plaintiff employment.

410.    In July 2016, Defendant Root deliberately changed Plaintiff's final performance evaluation from highly effective to developing.

411.    In May 2017, Defendant Root did not choose any person of color to serve on the 2017-2018 interviewing committee, including Plaintiff even though Plaintiff informed Root in an April 30, 2017 email that she was interested. Root chose all female whites or all male whites to serve on the committee.

412.    Defendant Root added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race, and age.

413.    Defendant Root was instrumental in the decision making process to place Kittelberger at North Star.

[57]

414.     **Defendant Dr. Cliby** in his official capacity as a salaried employee for Defendant RCSD and President of ASAR, Dr. Cliby failed to provide a fair duty of representation to the Plaintiff.

415.     Defendant Dr. Cliby was a salaried employee of the Rochester City School District, and as such is a state actor.

416.     Defendant Dr. Cliby was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

417.     Defendant Dr. Cliby knew full well that the Defendant RCSD was using its annual fiscal budgetary process to unlawfully to terminate the Plaintiff employment and that the defendants had entered into a memorandum of understanding to protect the tenured CASEs.

418.     Defendant Dr. Cliby knew full well that the RCSD Defendants and Root had changed Plaintiff's final performance evaluation from highly effective to developing. He looked the other way and went along with it.

419.     Defendant Dr. Cliby knew full well that Plaintiff had previously worked for the Defendant RCSD and that she had RTA experience and should not have been place in Wave III, i.e., No previous RTA experience.

420.     Defendant Dr. Cliby engaged in and participated in the Defendant RCSD's creation of a hostile work environment.

421.     Defendant ASAR knew full well knew that on February 6, 2017 the school district

[58]

changed Plaintiff's name to Bernice Malcom and placed her address as her social security

number without her knowledge and without her consent and changed her position to that of a

special education teacher under the RTA contract.

422.     On March 22, 2017, Plaintiff learned through the Democrat and Chronicle, a

public newspaper that the Defendant RCSD was eliminating the tenured areas, Bracket IV

probationary CASE positions and that no tenured CASE within the Bracket would be affected.

423.     March 22, 2017, Defendant ASAR sent out an email with the news explaining the

change of events.

424.     Defendant RCSD placed the affected probationary CASEs in Wave I, RTA

Experience to ASAR Experience with no break in service; Wave II, Previous RTA Experience

and Wave III, No previous RTA Experience.

425.     Plaintiff was placed in Wave III, even though she had two (2) years and several

months of previous RTA experience with the Defendant RCSD and had also been granted tenure

in another New York school, i.e., Honeoye Falls-Lima Central School District on September 1,

2004.

426.     Both Defendant RCSD and Defendant ASAR was aware and in full knowledge of

the same, including Deane-Williams, Kennedy, Simpson, Dr. Cliby, Rowe, and the Legal

Department, but not limited to.

427.     Defendants knew with the previous RTA experience, of two years and counting as

a special education teacher with the school district, the granting of tenure by HF-L after

successfully completing a three-year probationary period as a special education teacher, and the

two years of experience as a CASE administrator, Plaintiff was tenured.

428.     Defendant RCSD used one standard for Plaintiff and another  probationary

CASEs, including George, male white, age 35, Yajaira Walker ( now "Nyugen"), female white, age 30, Mark Ferraro ("Ferraro"), male white, age 41, Kathleen Foster ("Foster"), female black, age 44, Diana Radley ("Radley"), female white , age 42, but not limited to were all given their tenure status, but the Plaintiff was not even though she too was tenured.

429.      Defendant RCSD terminated the Plaintiff instead of providing the same equal access, opportunities, and standards that it provided to other probationary CASEs that they favored and showed preferential treatment to, including within and/or outside of the protected class. Plaintiff was the oldest. Plaintiff was 58 years of age at the time.

430.      Plaintiff met with Defendant ASAR numerous times throughout the 2015-2016, 2016-2017 school years regarding Defendant RCSD's breach of the employment contract and breach of the CBA.

431.      On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner, subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

432.      The  entire New York State Division of Human Rights Hearings held on November 14, 2018 and November 15, 2018  respectively speaks to the egregious, severe and pervasive conduct  that the Defendant RCSD, its officers, employees, supervisors, directors, administrators, managers, and agents, including  Defendants Deane-Williams, Simpson, Pauly, Root, Kittelberger, RCSD's Unknown female Attorney, Kennedy, RCSD's Legal Department, and other district officials subjected the Plaintiff to and how the defendants with discriminatory intent and motive targeted and harassed the Plaintiff by creating a coalition charged hostile work

environment and how Defendant ASAR looked the other way, engaged in and participated in the Defendant RCSD racially discriminatory and retaliatory actions against the Plaintiff.

433.     Defendant RCSD and Defendant ASAR knew full well there were a significant amount vacancies for the 2017-2018 school year in which Plaintiff was certificated and qualified for, but did not call Plaintiff to any of those positions, but instead moved and transferred employees which were not affected to those position which amounted to at least twenty-eight (28) vacant positions, including to probationary CASE, George as Director of Alternative Special Education Programs and Hart to Assistant Principal, but not limited to.

434.     Defendant RCSD and Defendant ASAR knew full well that Hart was the less senior probationary CASE.

435.     Defendant Dr. Cliby in his official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff.

436.     Defendant Dr. Cliby was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

437.     Defendant Dr. Cliby as ASAR President did not discharge his duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Dr. Cliby's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

438.     Defendant Dr. Cliby empowered and engaged in the creation of a hostile work environment during the 2015-2016 and 2016-2017 school years.

439.     Defendant Dr. Cliby knew what he was doing was wrong and should have known

that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

440.     Defendant Dr. Cliby added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

441.     **Defendant Rowe** in his official capacity as a salaried employee for Defendant RCSD and First Vice President of ASAR. Defendant Rowe failed to provide a fair duty of representation to the Plaintiff.

442.     Defendant Rowe was a salaried employee of the Rochester City School District, and as such is a state actor.

443.     Defendant Rowe was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

444.     Defendant Rowe knew full well that Plaintiff had previously worked for the Defendant RCSD and that she had RTA experience and should not have been place in Wave III, i.e., No previous RTA experience.

445.     Defendant Rowe engaged in and participated in the Defendant RCSD's creation of a hostile work environment.

446.     Defendant ASAR knew full well knew that on February 6, 2017 the school district changed Plaintiff's name to Bernice Malcom and placed her address as her social security number without her knowledge and without her consent and changed her position to that of a special education teacher under the RTA contract.

[62]

447.     On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner, subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

448.     Defendant Rowe knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

449.     Defendant Rowe was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

450.     Defendant Rowe in his official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff.

451.     Defendant Rowe was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

452.     Defendant Rowe as ASAR First Vice President did not discharge his duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Rowe's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

453.     Defendant Rowe empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

454.     Defendant Rowe knew what he was doing was wrong and should have known that

[63]

what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

455.    Defendant Rowe added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

456.    By the a above acts, with discriminatory animus and a pretext to discrimination, including the decision to maliciously and intentionally change the Plaintiff's final performance evaluation over-all rating to make it appear as developing instead of highly effective, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e et seq., by discriminating against Plaintiff based on her color, race, and age, including disparate treatment.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW,**
**EXECUTIVE LAW §290 ET SEQ., AGAINST ALL DEFENDANTS**
**EQUAL PROTECTION**

457.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein in paragraphs numbered 367-456 regarding each and all defendants, including Deane-Williams, Simpson, Pauly, Root, Dr. Cliby and Rowe.

458.    Defendants deprived Plaintiff of her constitutional rights while acting under color of law.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**

[64]

**PERVIOUSLY/SUBSEQUENT TO JULY 22, 2020 (I Through VII)**

459.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

460.     Plaintiff should be allowed to amend the caption to add various defendants who engaged in and individually and personally participated in the discrimination, including up to Kari Ann Kittelberger, Kelly Sanson, Harry Kennedy, Sandra Jordan and the Unknown human resource (i.e., HCI) attorney that assisted Root in completing a false internal complaint od discrimination against her.

461.     The Defendants conduct has been a continued course of discriminatory conduct, including up to one or more of the acts complained of relates back to the Plaintiff's internal complaints of discrimination, charges of discrimination filed by Plaintiff before the Division and EEOC, claims alleged in complaints before this court.

462.     Defendants' conduct represents a continuing policy of discrimination.

463.     Defendants engaged in and participated in an ongoing and continuous pattern and practice of unlawful discriminatory and retaliatory employment practices relating to the terms, conditions, and privileges of her employment because of her race, color, age, and sex/gender, and that one or more of those discriminatory and retaliatory actions relates back to Plaintiff's original complaint.

464.     Defendants engaged in and participated in an ongoing and continuous pattern and

practice of unlawful discriminatory and retaliatory employment practices relating to the terms, conditions, and privileges of her employment because of her race, color, age, and sex/gender, and that her original pleading gave the defendants full and fair notice of the nature of the claims and that the defendants were aware and in knowledge of the nature of any additional claims, including, but not limited to those as subsequent to July 22, 2020.

465.     Plaintiff claims that in retaliation to her engaging in a protective activity and/or complaining of and opposing discrimination that Defendant RCSD retaliated against her post-employment based on her race and age by causing her loss of service credits, pension, and wages.

## I.  CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLEVII") 42 U.S.C. §2000E, ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT
### RACE DISCRIMINATION

466.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

467.     Defendant RCSD discriminated and retaliated against Plaintiff based on her race (Black/African American) and color (Black/African American) in violation of her rights to make an enforce employment contracts that are equal to contracts that Defendant RCSD grants to white employees, in violation of 42 U.S.C. §1981.

## II.  CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621 AGAINST ROCHESTER CITY SCHOOL DISTRICT
### AGE DISCRIMINATION

468.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

469.     Defendant RCSD discriminated against Plaintiff because of her age in willful violation of the ADEA by subjecting her to materially adverse employment conditions as a result of her age.

### III.     CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT <u>RACE DISCRIMINATION</u>

470.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

471.     Defendant RCSD through its highest ranking agent, Superintendent Deane-Williams, engaged in a pattern of unremedied discrimination on the basis of Plaintiff's race (Black/African American), in violation of New York State Human Rights Law, Executive Sections 290, *et seq.*

472.     After the filing of the Administrative complaints and after the filing of pleadings in this Court, Defendant RCSD terminated Plaintiff on account of her age in April 2018.

### IV.     CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST

## ROCHESTER CITY SCHOOL DISTRICT
## RETALIATION

473.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

474.     Defendant RCSD's actions relates back to one or more of the acts complained of in Plaintiff's charges of discrimination complaint before the Division and EEOC dated March 16, 2017, March 30, 2017, April 25, 2017, and August 25, 2017, and after Plaintiff filed her discrimination complaints with the Court in federal actions 17-cv-6873, 17-cv-6878, 18-cv-6450 and 20-cv-6537.

475.     After Plaintiff filed her discrimination complaints and after Plaintiff filed her discrimination complaints with the Court, Defendant RCSD continued in its pattern and practice of discrimination against Plaintiff up to including retaliating against her.

476.     Defendant RCSD's conduct relates back to one or more of the acts complained of in Plaintiff's charges of discrimination complaint before the Division and EEOC dated March 16, 2017, March 30, 2017, April 25, 2017, and August 25, 2017, and after Plaintiff filed her discrimination complaints with the Court in federal actions 17-cv-6873, 17-cv-6878, 18-cv-6450 and 20-cv-6537.

477.     Defendant RCSD retaliated against Plaintiff for filing discrimination complaints against the school district.

478.     After the filing of Plaintiff's Administrative charges and after Plaintiff's

[68]

commencement of pleadings against the Defendant Rochester City School District in this Court,

the Defendant Rochester City School District continued to engage in a continued pattern and

practice of discrimination and retaliation including up to providing false information to the

NYSTRS that she was placed on paid administrative leave on December 8, 2017, Defendant

RCSD paid her from December 8, 2017 through April 23, 2018, she did not return to work after

her paid leave was over and it was no need for her to return because the school district looked at

the paid leave as separation from employment (excerpts from the Affirmation of Attorney

Rebecca Kannan, Associate Deputy Counsel for the New York State Teachers' Retirement

System dated August 19, 2020).

## V.   CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621, AGAINST ROCHESTER CITY SCHOOL DISTRICT RETALIATION

479.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if  fully

set forth herein.

480.    After the filing of her administrative complaints of discrimination and after the

filings of pleadings in this Court, in retaliation, Defendant RCSD continued in a pattern and

practice of age discrimination against the Plaintiff.

## VI.   CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT RETALIATION

481.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

482.     In retaliation, Defendant RCSD claimed to have paid the Plaintiff from February 2018 through April 23, 2018.

483.     In retaliation, Defendant RCSD claimed to have placed the Plaintiff on paid administrative leave from December 7, 2017 through April 23, 2018.

484.     In retaliation, Defendant RCSD claimed that the Plaintiff refused to return to work after the paid administrative leave and was terminated because of it.

485.     In retaliation, Defendant RCSD claimed that there was no need for the Plaintiff to return to work after the paid leave because the school district looked at it as a separation from employment.

486.     In June 2019, in retaliation, Defendant RCSD caused the NYSTRS to take away Plaintiff's service credits, salary and benefits from July 1, 1999 through June 30, 2000 (NYSTRS took away 3 months), July 1, 2017 through June 30, 2018 (NYSTRS took away the entire year).

487.     In retaliation, the Honeoye Falls-Lima Central School District caused the NYSTRS to take away Plaintiff's service credits from  June 30, 2005 through July 1, 2006 (NYSTRS took away 1 month); June 30, 2006 through July 1, 2007 (NYSTRS took away 2 months); June 30, 2007 through July 1, 2008 (NYSTRS took away the entire year).

## VII.                            **BREACH OF CONTRACT**

488.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered

[70]

above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

489.     Defendant RCSD breached the employment contract.

### VIII.   CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST ASAR RACE DISCRIMINATION

490.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

491.     Defendant ASAR refused to progress Plaintiff's grievances to arbitration because of her race.

### IX.   CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621 AGAINST ASAR AGE DISCRIMINATION

492.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

493.     Defendant ASAR refused to progress Plaintiff's grievances to arbitration because

of her age.

## X.  CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ASAR RACE DISCRIMINATION

494.      Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

495.      After Plaintiff filed her discrimination complaints and after Plaintiff filed her discrimination complaints with the Court, ASAR continued in its pattern and practice of discrimination against Plaintiff up to including retaliating against her.

496.      Defendant ASAR refused to pursue Plaintiff's grievances regarding her salary, demotion, and termination during the 2017-2018 school year to arbitration as it did or would have done for non-minority unit members.

497.      Defendant ASAR retaliated against Plaintiff for complaining of and opposing discrimination and for filing a discrimination complaint against the union.

## XI.  CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST ASAR RETALIATION

498.      Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

[72]

499.     Defendant ASAR's actions relates back to one or more of the acts complained of in Plaintiff's charges of discrimination complaint before the Division and EEOC dated March 16, 2017, March 30, 2017, April 25, 2017, and August 25, 2017, and after Plaintiff filed her discrimination complaints with the Court in federal actions 17-cv-6873, 17-cv-6878, 18-cv-6450 and 20-cv-6537.

500.     Defendant ASAR retaliated against Plaintiff for complaining of and opposing discrimination and for filing a discrimination complaint against the union.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff prays for relief and judgment entered in her favor as follows:

a.  A declaratory judgment finding that: (a) Defendant Rochester City School District and Defendant ASAR discriminated against Plaintiff on the basis of her race, color, age, and/sex/gender, subjected her to a hostile work environment and disparate treatment; and retaliated against her in violation of Title VII, NYSHRL, ADEA, Section 1981, Section 1983 and Equal Protection and Retaliation;

b.  An injunction requiring the Rochester City School District to cease its pattern and practice of unlawful discrimination against Plaintiff and other similarly situated employees because of race, color, age, and sex/gender, and as such subjecting them to working in a hostile working environment, and for retaliation against Plaintiff and other similarly situated employees who complain of discrimination and retaliation;

c.  An order requiring Defendant Rochester City School District to reinstate Plaintiff's employment and place her in the position of CASE administrator as a Central Office Committee on Special Education ("CSE") Chairperson, tenured

area Bracket IV, CASE which is now titled Associate Director of Special Education, tenured area, Bracket III, Assistant Principal as the tenured employee that she is;

d.  An order requiring Defendant RCSD to pay Plaintiff all the back pay, wages, benefits, and pensions that Plaintiff lost as a result of the Defendant RCSD's discrimination and retaliation in failing to promote Plaintiff, and in terminating Plaintiff, together with prejudgment interest;

e.  An order requiring Defendant RCSD to pay Plaintiff front pay together with benefits and pensions;

f.  An order requiring Defendant RCSD to make Plaintiff whole as to any increased income taxes for which Plaintiff will be liable as a result of receiving pay covering several years in one year;

g.  An order requiring Defendant RCSD to pay Plaintiff the cost of this litigation, including any and all out-of-pocket costs over the years of the cost of this litigation;

h.  An order requiring Defendant RCSD and Defendant ASAR to pay Plaintiff individually civil fines and penalties up to $300,000 for committing an act of discrimination and retaliation pursuant to the EEOC;

i.  An order requiring Defendant RCSD to pay Plaintiff individually civil fines and penalties up to $100,000 for committing acts of willful, wanton, or malicious discrimination and retaliation against Plaintiff pursuant to the NYS HRL;

[74]

j.   An order requiring Defendant RCSD to pay Plaintiff individually civil fines and penalties up to $50, 000 for committing acts of retaliation for willful, wanton or malicious retaliation;

k.   An order Defendant ASAR to pay Plaintiff individually fines and penalties up to $300,000 for willful, wanton or malicious retaliation pursuant to the EEOC;

l.   An order requiring Defendant ASAR to pay Plaintiff individually civil fines and penalties up to $50, 000 for committing acts of retaliation for willful, wanton or malicious retaliation;

m.   An order that Plaintiff be awarded general and compensatory damages, including prejudgment and post-judgment damages interest in an amount according to proof at trial;

n.   That Plaintiff be further awarded punitive damages in an amount according to proof at trial;

o.   That Plaintiff be further awarded reasonable attorney's fees and cost of suit;

p.   That Plaintiff further awarded reinstatement to her job with any increase in salary, incentives, and benefits;

q.   That Defendants make Plaintiff whole from the unlawful employment practices described above by providing compensation for non-pecuniary losses;

r.   An order requiring and granting preliminary and permanent injunctions, prohibiting the Defendants, their officers, employees, agents, successors, and other persons in their employment and in concerted effort with the defendants and those acting in concert with them and at their direction from engaging in any of the practices set forth above to implement an affirmative action program and

[75]

training program to stop the deprivation of constitutional rights of individuals

similarly situated to the plaintiff;

s.   That this Court grant such other and further relief as the Court deems just and

proper.

DATED: April 26, 2021
West Henrietta, New York
Monroe County, New York

## VERIFICATION

**STATE OF NEW YORK**   )

**COUNTY OF MONROE**   ) ss:

**BERNICE CURRY-MALCOLM**, maiden name Bernice Curry, being duly sworn, and

says that I am the *pro se* Plaintiff in the above entitled captioned action and under penalty of

perjury, I declare that I have read the foregoing Second Combined Verified Amended Complaint

and that the facts stated in it are true, except as to matters therein stated to be alleged on

information and belief and as to those matters, I believe to be true.

Bernice Curry-Malcolm  - Plaintiff, *Pro se*
6 Gingerwood Way
West Henrietta, New York 14586-9448

**STATE OF NEW YORK**   )

**COUNTY OF MONROE**   ) ss:

This 26th day of April 2021, before me, the subscriber, personally appeared Bernice Curry-

Malcolm to me known and known to me to be the same person described in and who executed

the within instrument, and she duly acknowledged to me that she executed the same.

Notary Public

REBECCA B . WIESNER
NOTARY PUBLIC, State of New York
Monroe County, No. 01WI6268295
Commission Expires 9/04/2024

[76]

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BERNICE CURRY- MALCOLM

Plaintiff,

ASSOCIATION OF SUPERVISORS AND
ADMINISTRATORS OF ROCHESTER, ("ASAR")
DR. TIMOTHY CLIBY, PRESIDENT and Individually,
JOHN ROWE, VICE PRESIDENT and Individually,
ROCHESTER CITY SCHOOL DISTRICT,
BARBARA DEANE-WILLIAMS,
SUPERINTENDENT OF SCHOOLS and Individually,
SANDRA SIMPSON, CHIEF OF SPECIALIZED
SERVICES AND FORMER INTERIM EXECUTIVE
DIRECTOR OF SPECIALIZED SERVICES and Individually,
MARY PAULY, EXECUTIVE DIRECTOR OF SPECIALIZED
SERVICES and Individually, TERESA ROOT, ZONE DIRECTOR
OF SPECIALIZED SERVICES and Individually,

Defendants.

**CERTIFICATE OF SERVICE**
**Civ. No.: 17-cv-6878 (Hon. DGL)**
**U.S.C.A. Appeal No.: 19-2412cv**

**Civ. No.: 17-cv-6450 (Hon. DGL)**
**U.S.C.A. Appeal No.: 19-2416cv**

**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

I, Mrs. Bernice Curry-Malcolm, hereby certify under the penalty of perjury that on the

26th_ day of April 2021, that I handed-delivered the Original and a copy of the Second Combined

Verified Amended Complaint, dated April 26, 2021 together with Plaintiff, Bernice Curry-

Malcolm Verified Affidavit dated April 26, 2021 upon the Office of the Clerk, United States

District Court, Western District of New York  located at United States District Court, 2120 U.S.,

Courthouse, 100 State Street, Rochester, New York 14614 and that I served the same by postal

mail upon the Defendants. The United States Postal Service worker is over the age of 18 years

and is not a party to these proceedings and that I served by United States Postal Service Priority

COPY TO:

[77]

*Via United States Postal Service Priority Mail*

Rochester City School District, Superintendent of Schools
Board of Education
Attorney for Defendants-Respondents' Rochester City School District, et al., Alison K. L.
Moyer, Esq.
Email: alison.moyer@rcsdk12.org
Telephone: (585) 262-8550
131 West Broad Street
Rochester, New York 14614
Telephone (585) 262-8100

School Administrators Association of New York State ("SAANYS")
For Defendants Association of Supervisors and Administrators of Rochester (ASAR), et al.
Attorney for Defendants-Respondents' Association of Supervisors and Administrators of
Rochester ("ASAR"), Arthur Scheuermann, Esq., and Jennifer L. Carlson, Esq., Deputy Counsel
Email: ascheuermann@saanys.org
Email: JCarlson@saanys.org
8 Airport Park Boulevard
Latham, New York 12110
Telephone: (518) 782-0600


Dated: April 26, 2021
West Henrietta, New York
Monroe County, New York

Bernice Curry-Malcolm, *Pro se Plaintiff*
6 Gingerwood Way
West Henrietta, New York 14586