UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERNICE MALCOLM,

                              Plaintiff,

                    v.

ASSOCIATION OF SUPERVISORS AND
ADMINISTRATORS OF ROCHESTER (ASAR),
TIMOTHY CLIBY, President and Individually,
JOHN ROWE, Vice President and Individually,
ROCHESTER CITY SCHOOL DISTRICT, and
BARBARA DEANE-WILLIAMS, Superintendent
of Schools, Individually,

                              Defendants.
_____

BERNICE CURRY-MALCOLM,

                              Plaintiff,

                    v.

ROCHESTER CITY SCHOOL DISTRICT and
BARBARA DEANE-WILLIAMS, Superintendent
of Schools, Individually and Collectively,

                              Defendants.
_____

DECISION AND ORDER

17-CV-6878L
18-CV-6450L

        Plaintiff Bernice Curry-Malcolm ("plaintiff") was employed by the Rochester City School

District (the "District"), beginning in 2015 and continuing through the end of the 2016-17 school

year. She has previously brought several lawsuits against various District entities and employees,

as well as against the Association of Supervisors and Administrators of Rochester ("ASAR") and

two of its employees, arising out of that period of employment. Her claims include race-based and age-based discrimination and retaliation in violation of state and federal anti-discrimination statutes, as well as miscellaneous labor-related claims and claims sounding in contract. All of these were initially dismissed by this Court. *See Malcolm v. Ass'n of Supervisors & Adm'rs of Rochester (ASAR)* ("*Malcolm I*")*,* 17-CV-6878 (dismissed at 388 F. Supp. 3d 242 (W.D.N.Y. 2019)); *Malcolm v. Rochester City Sch. Dist. et al.* ("*Malcolm II*"), 17-CV-6873 (dismissed, Dkt. #14); *Curry-Malcolm v. Rochester City Sch. Dist. et al.*, ("*Malcolm III*"), 18-CV-6450 (dismissed at 389 F.Supp.3d 189 (W.D.N.Y. 2019)); *In re Curry-Malcolm* ("*Malcolm IV*"), 20-CV-6537 (dismissed at 2020 U.S. Dist. LEXIS 131548 (W.D.N.Y. 2020)).

Plaintiff appealed this Court's decisions in *Malcolm I*, *II*, *III*, and *IV*. On October 14, 2020 and November 12, 2020, the Second Circuit Court of Appeals affirmed this Court's dismissals of *Malcolm I*, *II* and *III*, but reversed and remanded portions of *Malcolm I* and *III*, for consideration of whether plaintiff should be granted leave to amend certain of her dismissed claims. (17-CV-6878, Dkt. #32, #33). The plaintiff's appeal in *Malcolm IV* remains pending.

The Court consolidated *Malcolm I* and *Malcolm III* for purposes of determining the issues on remand. On December 30, 2020, the Court issued a Decision and Order which, inter alia, granted plaintiff leave to file an Amended Complaint to restate some of her previously dismissed claims, and to assert any new related claims. (17-CV-6878, Dkt. #34). Plaintiff thereafter filed an Amended Complaint (Dkt. #39). The Court dismissed the Amended Complaint, without prejudice, for failure to comply with the pleading requirements of Fed. R. Civ. Proc. 8, and granted plaintiff leave to file a Second Amended Complaint. (17-CV-6878, Dkt. #41).

Plaintiff filed a Second Amended Complaint on April 26, 2021. (17-CV-6878, Dkt. #43). The defendants now move to dismiss the Second Amended Complaint pursuant to Fed. R. Civ.

Proc. 8, 10, 11, 12(b)(1), (2), (3), and (6), and/or for failure to comply with this Court's prior orders. (17-CV-6878, Dkt. #44, #46). For the reasons that follow, the defendants' motions are granted, and the Second Amended Complaint is dismissed.

## FACTUAL BACKGROUND

Beginning in 2015, plaintiff was employed by the District as a full-time probationary Case Administrator for Special Education ("CASE"). Plaintiff claims that she was thereafter subjected, inter alia, to age-based and/or race-based discrimination, in the form of a hostile work environment, disparate treatment and/or retaliation by the District, ASAR, and certain District and ASAR employees, culminating in the termination of her employment on or about July 1, 2017. Plaintiff was placed on a preferred eligibility list, and was ultimately rehired by the District less than five months later, on or about November 20, 2017. (18-CV-6450, Dkt. #14 at 2).

This Court's December 30, 2020 Decision and Order (17-CV-6878, Dkt. #34), in conformity with the Second Circuit's directives, permitted plaintiff to file an Amended Complaint to reassert, e.g.,: (1) discrimination and retaliation claims against the District pursuant to Title VII of Civil Rights Act of 1964, 42 U.S.C. §2000e ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA") and, to the extent such claims were not already determined to be barred by plaintiff's election of remedies, the New York Human Rights Law, N.Y. Exec. Law §290 et seq. ("NYHRL"); (2) equal protection claims under 42 U.S.C. §1983; and (3) any additional claims for which right-to-sue letters were issued after the commencement of *Malcolm IV* on or about July 22, 2020. The Court reiterated these holdings in its April 6, 2021 Decision and Order dismissing plaintiff's first Amended Complaint. (17-CV-6878, Dkt. #41).

**DISCUSSION**

## I.      Fed. R. Civ. Proc. 8

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Dismissal of a complaint for failure to comply with Rule 8 is generally reserved for those cases in which the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). This standard should be applied with special lenience to pro se pleadings. *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995).

Plaintiff's initial Amended Complaint – which the Court dismissed based on its failure to comply with Rule 8 – was 132 pages and 592 paragraphs in length, along with exhibits comprised of an additional 234 pages. It described fifteen causes of action, a number of which were not properly asserted, because they were untimely, unexhausted, or had previously been dismissed with prejudice, with such dismissal affirmed by the Second Circuit.

Unfortunately, some of the same defects persist in plaintiff's Second Amended Complaint. The Second Amended Complaint is 76 pages and 500 paragraphs long, and asserts a total of twenty-two causes of action, several of which were previously dismissed by this Court with prejudice, and the dismissal of which was affirmed by the Second Circuit. Plaintiff appears to have disregarded the Second Circuit's orders, and this Court's admonitions, in attempting to reassert those claims.[1] Moreover, the Second Amended Complaint continues to include extraneous material, including factual allegations and claims against another, unrelated school district by

---

[1] Although defendants urge the Court to dismiss the Second Amended Complaint on the basis of its noncompliance with Court orders pursuant to Fed. R. Civ. Proc. 11, the Court declines to do so, in deference to plaintiff's pro se status, and in the well-settled interest of resolving the instant disputes on their merits.

whom plaintiff was employed prior to the events underlying this action. (17-CV-6878, Dkt. #43 at ¶¶223, 225, 226, 487).

While the Second Amended Complaint is not a model of clarity and, on its face, fails to comply with the prior orders of this Court, I find that when viewed with the favorable inferences owed to a pro se pleading, the Second Amended Complaint is narrowly sufficient to give defendants fair notice of the plaintiff's claims. I therefore decline to dismiss it for failure to satisfy the requirements of Rule 8. (17-CV-6878, Dkt. #43 at ¶¶315-465).

## II.     Motions to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6)

### A.     Rule 12(b)(6) Standard

In deciding whether a complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6), a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (citing *Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987)). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

While this standard applies no less to pro se pleadings, the Court is mindful that a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). Nevertheless, all pleadings, pro se or otherwise, must contain enough factual allegations to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*

### B.   Reasserted Title VII Claims Against the District (Counts I and IV)

#### i.   Disparate Treatment

As in her initial and Amended Complaints, plaintiff alleges that the District subjected her to race-based discrimination and retaliation during her employment as a probationary CASE.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Stating a claim of discrimination in violation of Title VII requires the plaintiff to allege two elements: "(1) [that] the employer took adverse employment action against [the plaintiff]; and (2) [that plaintiff's] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)(emphasizing that at the pleadings stage of an employment discrimination case, a plaintiff has the "minimal burden" of alleging facts "suggesting an inference of discriminatory motivation")(quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

An adverse employment action occurs when an employee "endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d 72 at 85 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Galabya*, 202 F.3d 636 at 640, and includes (but is not limited to) such acts as discharge or demotion, denial of a promotion, assignment of additional responsibilities, involuntary transfer to an inferior position, and denial of benefits. *See Little v. NBC*, 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002).

6

Plaintiff alleges that she suffered from the following adverse employment actions as a probationary CASE: (1) the District, allegedly in violation of its own policies, failed to adequately investigate her internal complaints of discrimination; (2) plaintiff was "transferred" in February 2017 without her consent; (3) the District made errors in its record-keeping and reporting to the teacher's union concerning plaintiff's married name and Social Security number; and (4) plaintiff was given a performance rating of "developing" in an annual evaluation. (17-CV-6878 at ¶¶256, 273-76).

Granting plaintiff every favorable inference, none of the complained-of acts, singly or in combination, arise to the level of an adverse employment action, or are sufficient to raise an inference of discriminatory animus.

With respect to plaintiff's claim that the District failed to adequately investigate her internal complaints of discrimination, courts in this Circuit have consistently concluded that an employer's failure to investigate a plaintiff's complaint of discrimination does not constitute an adverse employment action for purposes of a disparate treatment claim. *See Bianchi v. Rochester City Sch. Dist.*, 2019 U.S. Dist. LEXIS 168991 at *23 (W.D.N.Y. 2019); *Day v. City of New York*, 2015 U.S. Dist. LEXIS 161206 at *24 (S.D.N.Y. 2015)(collecting cases).

I find no basis to disturb this precedent, particularly given that plaintiff makes no claim that the District's allegedly insufficient investigations altered the terms and conditions of her employment in any way. Similarly, although plaintiff alleges that she was involuntarily "transferred" in February 2017, she does not describe the particulars of the transfer, and makes no claim that she was transferred to an inferior position, or that her terms and conditions of employment were changed. As such, neither action plausibly arises to the level of an adverse employment action.

Turning to plaintiff's allegation that her supervisor's assignment of a "developing" rating in a performance evaluation was adverse, it is well settled that "a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019). Plaintiff has not alleged that the "developing" rating resulted in any form of discipline, or that it otherwise altered her compensation, benefits, job title, or any other terms and conditions of her employment. As such, plaintiff has failed to plausibly state that the performance evaluation was adverse.

Finally, plaintiff's allegations that the District purposely made mistakes in its records or its communications to the union concerning plaintiff's married surname and/or Social Security number are insufficient to raise an inference of discriminatory animus. Plaintiff makes no claim that the District was less prone to recordkeeping errors for employees who are not part of a protected class, and does not allege that these errors had any negative repercussions with respect to the terms and conditions of her employment, or to her receipt of union-related services.

Plaintiff's Title VII discrimination and retaliation claims are accordingly insufficiently stated, and are dismissed.

### ii.    Hostile Work Environment

Plaintiff's Second Amended Complaint also refers to her having experienced a hostile work environment.

"An employer violates Title VII when the 'workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . so long as there is a basis for imputing the conduct that created the hostile environment to the employer.'" *Rasmy v.*

*Marriott Int'l Inc.*, 952 F.3d 379, 387 (2d Cir. 2020) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010)).

"To plead a hostile work environment claim, a plaintiff must plead facts that describe conduct which: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Maines v. Last Chance Funding, Inc.*, 2018 U.S. Dist. LEXIS 162073 at *26 (E.D.N.Y. 2018) (quoting *Placide-Eugene v. Visiting Nurse Serv. of New York*, 2013 U.S. Dist. LEXIS 76240 at *34 (E.D.N.Y. 2013)). Furthermore, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citations and internal quotation marks omitted).

Here, plaintiff claims in vague and conclusory fashion that she was subjected to ongoing race-based harassment by her supervisor, and by a coworker. She describes their conduct toward her as "hostile," a "relentless unwarranted attack," "harassing and discriminatory," "horrible," and designed to "provoke" plaintiff. (17-CV-6878, Dkt. #43 at ¶¶249-50, 266-68). However, plaintiff does not describe any specific comments or actions by either woman.

These allegations do not plausibly describe a hostile work environment. Plaintiff does not identify any offensive, disparaging or insulting words or actions, let alone a continuous or pervasive pattern of such incidents, motivated by or relating to plaintiff's race (or, more broadly, related to her membership in any protected class). She makes no allegation that any of the conduct to which she refers, whatever it might have been, is attributable to the District.

While plaintiff does allege, as discussed above, that her supervisor gave her an unfair performance review, and that the District failed to properly investigate plaintiff's internal complaints, such allegations are "insufficient as a matter of law to state a hostile work environment claim." *Haggood v. Rubin & Rothman, LLC*, 2014 U.S. Dist. LEXIS 161674 at *48 (E.D.N.Y. 2014) (claims that employer reprimanded plaintiffs, failed to investigate their discrimination complaints, and engaged in excessive scrutiny, even if adequate to demonstrate disparate treatment, are insufficient to state a hostile work environment claim).

In short, plaintiff's hostile work environment claim is comprised solely of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which are insufficient to state a claim. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). That claim is accordingly dismissed.

### iii.    Retaliation

Plaintiff alleges that the District retaliated against her for complaining about discrimination by terminating her employment in 2017, and by no longer paying plaintiff's union dues and "retirement loan" thereafter.

In order to state a claim of retaliation in violation of Title VII, a plaintiff must "give plausible support to the reduced prima facie requirements" of: (1) participation in protected activity; (2) the employer's awareness of that activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Febrianti v. Starwood Worldwide*, 2016 U.S. Dist. LEXIS 15285 at *9 (S.D.N.Y. 2016). *See also Ninying v. N.Y. City Fire Dep't*, 2020 U.S. App. LEXIS 12232 at *5 (2d Cir.2020) (unpublished opinion).

With respect to her retaliation claims, plaintiff has failed to allege facts sufficient to suggest any causal connection between her protected activity and the District's actions. As this Court has

previously observed, the elimination of the probationary CASE positions resulted in the layoff of some twenty-two employees, none of whom are alleged to have engaged in protected activity except for plaintiff. All of those employees – plaintiff included – were re-employed by the District within four months, with plaintiff having declined the District's initial offer of a full-time teaching position, and then having accepted its second offer, for the same compensation and benefits she had previously received.[2] Nor does the fact that the District ceased paying plaintiff's union dues or "retirement loan" during the period when she was not employed by the District have any plausible connection with plaintiff's protected activity, particularly as plaintiff makes no allegation that the District otherwise had a policy or practice of continuing to provide such benefits to other former employees.

As such, plaintiff's Title VII claims against the District defendants are once again dismissed for failure to state a claim, for the reasons set forth herein, as well as in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

---

[2] It is well-settled that at the pleading stage, temporal proximity can sometimes be sufficient to establish a causal connection between protected activity and retaliatory actions. However, as the Court previously observed in dismissing the complaint in *Malcolm IV*, while "'temporal proximity, without more,' may be sufficient to suggest an inference of discrimination for purposes of a claim for retaliatory termination, 'temporal proximity, with less' – that is, vague allegations of potential temporal proximity, eroded by a plaintiff's own factual allegations that suggest coincidental timing, describe an adverse employment action which equally affected dozens of employees who didn't engage in protected activity, and indicate that plaintiff's employer subsequently made multiple attempts to reemploy her, and ultimately did re-hire her in a position with equal pay and [benefits] – is insufficient to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (20-CV-6537, Dkt. #3 at 13-14) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Febrianti*, 2016 U.S. Dist. LEXIS 15285 at *15-*17 (dismissing retaliation claim as wholly conclusory where plaintiff points to no circumstantial evidence of retaliation such as disparate treatment of employees who didn't engage in protected conduct, relies solely on temporal proximity, and sets forth "uniformly vague allegations about the events surrounding [her protected activity and the adverse employment action that followed, which] in no way suggest that the temporal proximity . . . is anything but coincidence").

C.      **Reasserted ADEA Discrimination and Retaliation Claims Against the District (Counts II and V)**

Plaintiff's allegations of age-based discrimination are based on the same facts that underlie her Title VII claims: plaintiff claims that the District's actions toward her were motivated, if not by race-based discriminatory and retaliatory animus, then by age-based factors.

In order to state a prima facie claim of age-based discrimination in violation of the ADEA, a plaintiff must allege that: (1) she is a member of a protected class (e.g., over the age of forty); (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination based on age. *See Grady v. Affiliated Cent., Inc*., 130 F.3d 553, 559 (2d Cir. 1997).

As with her Title VII claims, plaintiff has failed to plausibly allege that she was subjected to an adverse employment action under circumstances permitting an inference of discrimination. Plaintiff describes no age-based comments or disparate treatment in the terms and conditions of her employment. Although plaintiff claims to have been the oldest person among the class of CASEs whose employment was terminated, the group included a number of persons under the age of forty, thus undermining any inference that the layoffs were motivated by age. To the extent plaintiff contends that the District retaliated against her for complaining about age-based discrimination, she again fails to allege facts sufficient to suggest a causal connection between her protected activity and the elimination of the CASE positions, or the District's payment of union dues or other benefits.

Plaintiff's ADEA discrimination and retaliation claims are therefore dismissed, for the reasons set forth herein, as well as in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

12

### D.      Reasserted Breach of Contract Claim Against the District (Count VII)

Plaintiff's breach of contract claim was previously dismissed, and such dismissal was affirmed by the Second Circuit, on the grounds that plaintiff had failed to identify any contract with the District, or any provision thereof, that was allegedly breached.

Plaintiff's Second Amended Complaint refers to a collective bargaining agreement and generally alleges that she has been "denied her rights" pursuant to it (17-CV-6878, Dkt. #43 at ¶205), but fails to identify any valid contractual provision that was allegedly breached by the District. Plaintiff's breach of contract claim is accordingly dismissed as insufficiently stated, for the reasons set forth in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

### E.      Reasserted ADEA Claims Against ASAR (Count IX)

Plaintiff's Second Amended Complaint broadly alleges that ASAR discriminated against plaintiff due to her age, and that it "allowed" the District to do so.

The ADEA prohibits labor organizations such as ASAR from excluding, expelling, or segregating persons due to their age, or from depriving them of employment opportunities or causing or attempting to cause an employer to discriminate against them in violation of the Act. *See* 29 U.S.C.A. §623(d).

As with her initial Complaint, plaintiff's Second Amended Complaint "lacks sufficient detail to support her allegations." (17-CV-6878, Dkt. #32 at 4). The Second Amended Complaint fails to set forth any facts that plausibly suggest that ASAR or any of its officers treated plaintiff differently because of her age, or that ASAR engaged in any conduct that caused, or attempted to cause, the District to do so.

13

Plaintiff's ADEA claims are accordingly dismissed, for the reasons set forth in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

**F.    Reasserted Title VII Claims of Discrimination Against ASAR (Count VIII)**

Plaintiff claims that ASAR unlawfully subjected her to race-based and/or gender-based discrimination, retaliation, and disparate treatment, in violation of Title VII, through ASAR's "neglect of duty, breach of contract and breach of a fair duty."

As before, plaintiff has failed to support her claims with factual allegations sufficient to render them plausible. Plaintiff makes no claim that ASAR denied her of any privilege of membership, or engaged in any specific overt act or omission that comprised discrimination against her, or that facilitated or supported discrimination by her employer.

For these reasons, as well as those set forth in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders, plaintiff's Title VII discrimination claims against ASAR are dismissed. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

**G.    Reasserted Equal Protection Claims (Count XI)**

Plaintiff asserts that the defendants violated her Constitutional right to equal protection, in violation of 42 U.S.C. §1983. Plaintiff's equal protection claims were initially dismissed, because ASAR was not a government actor, and because plaintiff had failed to allege any facts sufficient to raise an inference of discrimination against the District.

With respect to the ASAR defendants, it is well settled that labor unions and their employees are not state actors for purposes of Section 1983. This claim was previously dismissed for that reason, and the dismissal was affirmed by the Second Circuit. Plaintiff has asserted no

facts suggesting that ASAR or any of its employees are state actors, and as such, that claim must be dismissed.

With respect to the District defendants, plaintiff has supplemented her initial pleadings by alleging certain "direct actions" by individual defendant Superintendent Deane-Williams. *See generally Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(liability under Section 1983 requires proof that the defendant was directly involved in the unconstitutional conduct, by participating in it, directing it or authorizing it).

Specifically, plaintiff alleges that Deane-Williams "knew that [plaintiff's supervisor] had rated Plaintiff as highly effective," "knew that [the District] had changed the Plaintiff's name [in its internal records] in February 2017," "knew that Plaintiff was not affected as a probationary CASE administrator regarding the 2017-2018 budgetary process," "targeted" the probationary CASE employee group for layoffs, "entered into a memorandum of understanding" with the union to protect tenured CASEs from termination, and "was aware" that plaintiff's supervisor had changed her assessment of plaintiff's skills to "developing" in plaintiff's final performance evaluation. (Dkt. #43 at ¶¶367-86).

As before, these allegations suggest only that Deane-Williams was aware of certain facts – such as the impending layoff of the persons in plaintiff's position, and the contents of plaintiff's performance evaluations – and failed to intervene. None of them describe any direct involvement by Deane-Williams in altering plaintiff's terms and conditions of employment in a manner that "raise[s] a plausible inference of discrimination." (17-CV-6878, Dkt. #32 at 6).

In any event, plaintiff's equal protection claims are duplicative of her Title VII claims. It is well settled in this Circuit that "the analytical framework of a workplace equal protection claim parallels that of a discrimination claim under Title VII." *Cunningham v. N.Y. State DOL*, 326

F. App'x 617, 620 (2d Cir. 2009) (unpublished opinion). Thus where, as here, they are asserted together, "the two must stand or fall together." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

Plaintiff's equal protection claims are accordingly dismissed, for the above-stated reasons, as well as those set forth in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

### H.   Improperly Reasserted Claims

#### i.   NYHRL Discrimination and Retaliation Claims (Counts III, VI and X)

Plaintiff's NYHRL claims were previously dismissed as barred by plaintiff's election of remedies before the NYSDHR. Their dismissal was affirmed by the Second Circuit, and plaintiff was explicitly directed that she was collaterally estopped from reasserting them. *See York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002)("NYHRL . . . claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court").

Those claims are accordingly dismissed, for the reasons set forth in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

#### ii.   Claims Against the Individual Defendants

Plaintiff's Title VII and ADEA claims against the individual defendants were previously dismissed as a matter of law, as "individual liability is not possible under either Title VII or the ADEA." *Leach v. Univ. at Buffalo Pediatric Assocs.*, 2021 U.S. Dist. LEXIS 83457 at *20 (W.D.N.Y. 2021)(citing *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) and *Cherry v.*

16

*Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002)). Their dismissal was affirmed by the Second Circuit, and plaintiff was explicitly directed that she was estopped from reasserting them.

Those claims are accordingly dismissed, for the above-stated reasons, as well as those set forth in this Court's July 11, 2019 Decisions and Orders, and in the Second Circuit's October 14, 2020 and November 12, 2020 Summary Orders. (18-CV-6450, Dkt. #14; 17-CV-6878, Dkt. #28, #32, #33).

### I. New Individual Defendants

Plaintiff's Second Amended Complaint seeks to add a number of individual defendants who were not previously named in plaintiff's four lawsuits arising out of her employment with the District. These include several District employees and an attorney. Plaintiff makes no factual assertions demonstrating that her administrative remedies have been exhausted with respect to any of these parties, and in any event, her discrimination and retaliation claims against these individual defendants fail as a matter of law for the same reasons discussed above. Her request to add them as parties to the instant lawsuit(s) is accordingly denied.

### J. New Claims

Plaintiff's Second Amended Complaint also sets forth eleven new claims, which are alleged to have arisen after her rehire in November 2017. (17-CV-6878, Dkt. #43 at ¶459 et seq.).

Initially, the bulk of plaintiff's new claims are nothing more than boilerplate recitations of the elements of a cause of action, with no supporting facts that are alleged to have taken place during the relevant time period. These include: (1) race-based discrimination claims against the District and ASAR under Title VII and the NYSDHR; (2) age-based discrimination claims against the District and ASAR under the ADEA and NYSDHR; (3) breach of contract claims against the

District; and (4) retaliation claims under Title VII, the ADEA and the NYDHR, against ASAR. Because these claims lack a sufficient factual basis to be plausible, they are dismissed.

Plaintiff does allege that after she was rehired by the District in November 2017, the District placed her on paid administrative leave from December 8, 2017 through April 23, 2018, and then terminated her employment once again, as a result of race-related or age-related discrimination, and/or in retaliation for her prior complaints about discrimination. (17-CV-6878, Dkt. #43 at ¶¶309, 473-78). However, the Second Amended Complaint fails to indicate whether these new discrimination/retaliatory termination claims – or any of plaintiff's other new claims, for that matter – have been administratively exhausted, or are entitled to be excused from the exhaustion requirement. Indeed, the latest administrative charge plaintiff claims to have filed was submitted in August 2017, prior to plaintiff's rehire, placement on paid leave, and subsequent termination. "Right to Sue" letters were issued by the NYSDHR and EEOC regarding that charge on February 14, 2018, and March 20, 2018, respectively – weeks before plaintiff's April 23, 2018 termination – and it is unclear what matters, if any, either agency investigated or determined with respect to plaintiff's second period of employment with the District, in and after November 2017. (17-CV-6878, Dkt. #43 at ¶¶135-38).

Because plaintiff's new claims arising in and after November 2017 are unaccompanied by any allegations that plaintiff's administrative remedies have been exhausted, and are not otherwise sufficiently stated, they are hereby dismissed, without prejudice.

The Court has reviewed plaintiff's pleading to determine whether it states some other claim not already enumerated by plaintiff, and has determined that it does not.

## CONCLUSION

For the reasons set forth above, plaintiff's Second Amended Complaint fails to state a plausible cause of action. The defendants' motions to dismiss (17-CV-6878, Dkt. #44, #46) are hereby granted, and the Second Amended Complaint (17-CV-6878, Dkt. #43) is dismissed in its entirety.

Plaintiff's causes of action arising out of her initial employment with the District, which ended in or about July 2017, are dismissed in their entirety, with prejudice.

Plaintiff's claims that are alleged to have arisen after her rehire by the District, in and after November 2017, are dismissed without prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 19, 2021.

19